# Richmond.

## BLOSE, BY ETC., v. BLOSE.

### November 11, 1915.

#### Absent, Keith, P.

1. RESCISSION—*Case in Judgment—Mental Incapacity—Fraud.*—The evidence in the case in judgment does not sustain the allegations of the bill that ·the grantor in the deed in controversy was mentally incapable of making the deed, or that it was obtained by undue influence or fraud, or that there was a failure of the consideration for its execution.

2. EVIDENCE—*Deeds—Evidence of Consideration.*—Parol evidence is admissible to show that the real consideration for a deed is not fully and correctly recited therein.

3. DEEDS—*Contract of Support—Equity—Liberal Construction.*—Where an agreement for the support of the grantors in a deed clearly appear as a substantial part of the consideration for the conveyance, a court of equity will construe it liberally in favor of the grantors, and will find some means for its enforcement. If there be doubt as to the place or manner of performance, the doubt will be resolved in favor of the beneficiaries. If the relief required is without exact precedent, the court can and will devise a remedy to fit the circumstances. It is immaterial whether the agreement to support be contained in the deed or a separate instrument, or be shown by parol, if it furnished the consideration for the grant, it will be treated as a clause in the deed and be enforced. The relation between the parties, in such case, is one of trust and confidence, and the incidents of the transaction will be closely scrutinized, and the instrument liberally construed in favor of the beneficiaries.

4. DEEDS—*Contract of Support—Case in Judgment—Liability of Corpus.*— Looking at the situation of the parties in the case in judgment, the nature of the transaction, and the mixed character of the consideration, consisting partly of a substantial sum of money and partly of a collateral stipulation for support, the grantee cannot be compelled to apply any part of the corpus of the estate granted to the support of the grantor.

5. DEEDS—*Contract for Support—Case in Judgment—Enforcement of Contract—Residence on Premises—Lien.*—Grantors conveyed to their son land for a stated money consideration, and simultaneously, and as a part of the same transaction, the son leased the land to the grantors for one year, renewable from year to year during their joint lives and the life of survivor, but with a right of entry by the lessor for failure to perform certain "conditions or terms of this lease." The lease, however, contained the following clause: "It is further understood that in any event the parties of the second part are to have their lifetime maintenance from the place." The lessees moved off the place and the lessor re-entered for alleged breach of the terms of the lease and took to himself all of the rents and profits. Suit was brought for the specific execution of the contract for support.

　　*Held:* The lessees were not obliged to remain on the premises as a condition of their right of maintenance, but are entitled to a reasonably comfortable support from the proceeds of the land, and to have the same secured to them by the appointment of a receiver, the recordation of a *lis pendens*, or in such other manner as may appear to the court satisfactory and safe.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for the defendant. Complainant appeals.

*Reversed in part.*

The opinion states the case.

*Sipe & Harris,* for the appellant.

*Conrad & Conrad,* for the appellee.

KELLY, J., delivered the opinion of the court.

By deed bearing date July 14, 1905, Elizabeth Blose and William P. Blose, her husband, conveyed certain real estate (the property of Elizabeth) to their son, William A. Blose. This deed expressed a total consideration of $3,000, reciting that $2,100 was paid in cash, and $900 was to be paid later without interest. It appears that about $1,500 of the sum recited as cash was applied by W. A. Blose to the debts of his mother, which were then pressing her. The residue of the cash

payment is accounted for in the following language from a letter to his parents written by him a short time before the deed was delivered: "The $600 I am to have, you know, is to partially compensate me for the $1,500 doing me no good for an indefinite period of time, as I am not supposed to get any returns from the place until after your death. And also as a consideration of my services before and after I became of age." This explanation was understood and acquiesced in by the grantors.

By a written contract, bearing even date with the deed, W. A. Blose leased to William P. and Elizabeth Blose the premises which they were thus simultaneously conveying to him. This contract contained, among others, the following provisions: "The parties of the second part (the lessees) shall annually pay an amount sufficient to pay all taxes assessed against the said property; shall put up at least fifty rods of good fence, at such points as may be designated by the party of the first part, repair and keep in good condition the fencing now on the property, keep the buildings on the property in ordinary repair, and farm the farming land in good and husbandmanlike manner. This lease is for one year and may be continued from year to year during the joint lives of the parties of the second part and of that of the survivor, provided that the terms of the lease above mentioned are strictly and fully and promptly performed; but upon the failure of the parties of the second part to perform any of the conditions or terms of this lease, the said lease may be terminated at the end of any year, on the first day of April, by the party of the first part giving notice to the parties of the second part, on or before the first day of January previous to the said first day of April of any year, of the intention to terminate the lease. *It is further understood that in any event the parties of the second part are to have their lifetime maintenance from the place."* (Italics ours.)

At the time of the execution of these papers William P. Blose and wife, who were considerably advanced in years, re-

sided on one of the tracts of land embraced therein, and the son, W. A. Blose, lived with his family in another county. The former remained on the premises, holding under the contract, until sometime in 1908, when they voluntarily moved away, leaving the property in the possession of a tenant, to whom they had sub-let the same. Subsequently, W. A. Blose, claiming that they had violated the lease contract in several respects, gave notice of a cancellation to take effect April 1, 1910, since which date he, through his tenants, has been in exclusive possession and control. In 1910 all three of the parties united in a sale of certain mountain land included in the deed and lease, but, in our view of the case, that transaction requires no discussion. William P. Blose died in April, 1912. His widow is still living.

In February, 1911, William P. and Elizabeth Blose filed a bill in equity against W. A. Blose, alleging that he had violated the agreement for their maintenance, that the rents and profits from the property were ample for their support, and praying that he be required either to specifically perform the agreement or to surrender the premises. Certain depositions were taken by the complainants in that suit, but before the cause was heard, to-wit, in September, 1911, the said Elizabeth Blose, suing by her next friend, Hiram C. Blose (another son), filed a bill against W. A. Blose seeking to cancel the deed of July 14, 1905, on the grounds of mental incapacity on her part, and undue influence, fraud and failure of consideration on the part of the defendant. After the institution of this second suit numerous and lengthy depositions were taken, swelling the record to its present volume of over six hundred printed pages. Finally, on July 27, 1914, these causes were heard together, and the circuit court rendered the decree from which this appeal was taken. That decree, in substance and so far as we are now concerned with it, held as follows: 1st, that the evidence was insufficient to sustain the charges of the bill in either cause, and that both should be dismissed with costs to the defendant;

2d, that certain payments made *pendente lite* by W. A. Blose to Elizabeth Blose under a consent decree, should be deemed in lieu of the support to which she was entitled; and, 3d, that the true intent and effect of the maintenance clause in the contract "was that the said lessees should be permitted to live on the place and be comfortably supported from the proceeds, even though they failed to perform the conditions of the lease, and the lessor should resume possession and control of the property because of such failure, and that the said provision of the contract did not impose upon the said W. A. Blose the duty of supporting the said Elizabeth and W. P. Blose elsewhere by means of a money stipend."

We are of opinion that there was no error in dismissing the suit for rescission. It is not feasible to discuss in detail the mass of evidence taken, *pro* and *con,* upon the questions of mental incapacity, undue influence, inadequacy of price, and other points pertaining to the good faith of the transaction or relied upon to show a failure of consideration. Upon a careful examination of all the testimony, viewed in the light of the principles approved in *Howard* v. *Howard,* 112 Va. 566, 72 S. E. 133; *Nunnally* v. *Stokes,* 116 Va. 472, 82 S. E. 79, and *Bresee* v. *Bradfield,* 99 Va. 331, 38 S. E. 196, and other Virginia decisions of like effect, we are satisfied that the evidence is wholly insufficient to sustain the allegations of this bill. The cases cited by counsel for appellee in which deeds providing for support have been rescinded because the support has not been furnished and the consideration has thus failed, were cases wherein the sole consideration for the conveyance was the agreement for maintenance and support. (See *Martin* v. *Hall,* 115 Va. 358, and cases cited p.. 361, 79 S. E. 320.) But in this case there was a substantial money consideration in addition to the agreement, and the latter was fully performed until within a short time before the suit was brought.

In *Keister* v. *Cubine,* 101 Va. 768, 770, 45 S. E. 285, 286, Judge Harrison delivering the opinion, says: "We do not

understand these cases to establish the hard and fast rule contended for, that in every case of a conveyance in consideration of maintenance and support, where the consideration fails, rescission follows. Those cases primarily establish the right and duty of a court of equity to take jurisdiction in this class of cases, because the remedy is manifestly inadequate at law. The case at bar is a further illustration of the wisdom of affording in such cases equitable relief, for it is here, if possible, more apparent that a court of law, with its more restricted powers, could not do justice between the parties. It does not follow, however, that the same relief must be administered in every case. Equity, having taken jurisdiction, will deal with each case in the light of its own peculiar circumstances."

There was already pending a suit to require the defendant to comply with the contract. We think the court in that suit could have administered all the relief to which the complainant was entitled; and, therefore, as the proof in the second suit, brought to obtain a rescission of the deed, is insufficient for that purpose, it was proper to dismiss the same at the cost of the complainant.

But we think the court erred in dismissing the bill in the first suit, and in the construction placed upon the contract for maintenance. We concur in the construction adopted, in so far as it implies that the "lifetime maintenance" provided for in the contract means such reasonable and comfortable support during the lifetime of the beneficiaries as could be realized from the annual net proceeds of the place when operated in a prudent and husbandmanlike manner, not in any event, however, to necessitate the consumption of any part of the *corpus* of the estate. Looking to the situation of the parties, the nature of the transaction, and the mixed character of the consideration, consisting partly of money and partly of the collateral stipulation for support, we do not think it could have been contemplated by the parties that under any circumstances W. A. Blose would be called upon to appropriate any part of the property itself to the maintenance of his parents.

Nor do we see any sufficient reason for interfering with the decree in its finding that the payments made *pendente lite* should be deemed in lieu of the support to which Elizabeth Blose was entitled, assuming, as we do, that the court did not intend this adjustment to operate beyond the date of that adjudication.

The particulars in which the decree appears to us erroneous are in holding (1) that the complainant was not entitled to any relief, and (2) that the contract for the maintenance was conditioned upon the residence of the beneficiaries on the premises.

It satisfactorily appears that the parents of the defendant got practically nothing from the farm after the early spring of 1910. It is true that the defendant subsequently paid into court, under a consent decree (which was not to prejudice his rights) fifteen dollars each month, aggregating at the date of the final decree $375, which the court held should be applied in lieu of the maintenance to which complainants were entitled. In a sense, therefore, as we are not disturbing this feature of the decree, it follows that the contract had been complied with to that date; but the fact remains, that for nearly one year before the suit was brought, and for more than a year afterwards, the complainants received nothing on account of the contract. In other words, under its meaning as we shall presently construe it, there was a breach of the contract before the suit was brought, which was not remedied until after the cause had been pending for eighteen months, and then only after a notice had been given for the appointment of a receiver to take charge of the property. The fact that reparation was then made in the form of monthly payments under a consent decree which recited that such payments were not to prejudice the defendant's rights, does not alter the situation which existed when the suit was brought, and it was error to decree that complainants had not made out a case for any relief.

This brings us to a consideration of that part of the decree complained of which holds that the agreement for support "did

not impose upon W. A. Blose the duty of supporting the said Elizabeth and W. P. Blose elsewhere (than on the farm) by means of a money stipend." This undoubtedly would have been a correct decision if the facts and the situation of the parties had remained just as they were when the deed and lease were executed, but we are of opinion that under the facts as they have developed and at present exist, the true intent and effect of the agreement is, in the respect now considered, very different from that which is ascribed to it in the decree.

That the stipulation for maintenance was a very substantial part of the consideration for the conveyance of the land, is too clear under the evidence to admit of any dispute. There is apparently some disposition on the part of the appellee to claim that the real consideration was fully expressed in the deed, but he says in his deposition that both grantors refused to sign the deed until this stipulation was inserted in the lease, that both papers were parts of the same transaction, and that as he paid $1,500 cash, agreed to pay $900 more, and "assumed the burden of maintaining these old people," he felt that he was paying a big price for the place. There is other and equally convincing proof to the same effect. No objection was made, and none could have been successfully made, to the parol evidence introduced to show that the real consideration for the deed was not fully and correctly recited therein (*Martin* v. *Hall, supra*).

The agreement for the support of the grantors thus clearly appearing as a substantial part of the consideration for the conveyance, a court of equity will construe it liberally in favor of the grantors, and will find some means for its enforcement. If there be a doubt as to the place or manner of performance, the doubt will be resolved in favor of the beneficiaries. If the relief required is without exact precedent, the court can and will devise a remedy to fit the circumstances. *Keister* v. *Cubine, supra.*

In a very full note to *Davis* v. *Davis,* 130 Am. St. Rep. 1040, it is said, with reference to contracts of this kind: "Courts of

equity will always give relief in some form, and generally it matters little whether the agreement to support is in the deed or is the subject of a separate instrument, since it will be enforced as a part of the conveyance; and even when the promise is a mere oral one, if it can be shown that the giving of the promise was the consideration for the grant, it is in most instances treated as a clause in the deed. The reason for this attitude of the courts is that such conveyances are made only in cases where the grantor reposed great trust and confidence in the grantee, and the relation of the parties is of such a fiduciary nature that all the incidents of the transaction require careful scrutiny, in order to protect a helpless and unsuspecting party from imposition, and since such grants are most frequently made by persons who are aged and infirm, mentally as well as physically, courts have such a protective interest in them as in cases of infants and persons who are *non compos mentis.*"

In *Tuttle* v. *Burgett,* 53 Ohio St. 498, 42 N. E. 427, 30 L. R. A. 214, 53 Am. St. Rep. 649, a leading case upon this subject, the court said: "The obligation is expressed in the language of the promisor who executed the mortgage, and according to a well established rule, should be taken most strongly against him, if there be doubt or ambiguity in its terms. . . . As a general rule, where no place is mentioned for the performance of an obligation, it is to be performed to the obligee in person, who may designate any reasonable place of performance; and that rule has been held applicable, in many cases, to contracts of the kind we have under consideration. *Wilder* v. *Whittemore,* 15 Mass. 262; *Crocker* v. *Crocker,* 11 Pick. (Mass.) 252; *Thayer* v. *Richards,* 19 Pick. (Mass.) 398; *Pettee* v. *Case,* 2 Allen (Mass.) 546; *Hubbard* v. *Hubbard,* 12 Allen (Mass.) 586; *McArthur* v. *Gordon,* 126 N. Y. 597 (27 N. E. 1033, 12 L. R. A. 667); *Stilwell* v. *Pease,* 4 N. J. Eq. 74; *Rowell* v. *Jewett,* 69 Me. 293. . . . . . . . .

"Contracts of this nature, entered into by persons of declining years, when their capacity for business has in some measure

become impaired, with children or relatives who receive not only a full consideration for their engagement, but usually something in the way of bounty also, should receive a liberal construction in favor of such elderly people, and the courts have enforced a corresponding performance in their behalf."

The principles announced in these authorities apply with much force to the case in hand. The appellee is shown to have had more influence over these old people than either of the other children, and it was his constant claim throughout his negotiations with them that he was being actuated chiefly by a concern for their welfare. He insisted, however, that he ought to be paid for his trouble and services, and they recognized this claim on his part in fixing the terms of the deed. Every consideration of right and justice requires that he should be held to a strict compliance with the contract under a liberal construction in his mother's favor. He is in no position to stand, as he is standing in this court, upon a construction of the contract which relieves him from accounting to her for the proceeds of the place because she no longer resides there. The terms of the contract of lease expressly provided for its termination and for a resumption of possession and control of the premises by him. He exercised his right of cancellation, and resumed entire possession and control, thereby making it impossible for them to take any part of the proceeds in kind. It is perfectly clear from the terms of the contract and from the subsequent construction which all the parties placed thereon, in words and in conduct, that none of them ever understood that the maintenance of William P. and Elizabeth Blose necessarily depended upon their remaining on the place. Time and again W. A. Blose recognized liability to them for the proceeds after they had moved away, notably in his letter of August 28, 1909, to their counsel, in which he says, referring to his father: "He has an idea that I want to deprive him of his maintenance, but that is a mistake, and I cannot do that by contract, and I certainly would not from principle, if I could. All I want is for

him to keep his hands out of business, sit at home, do *nothing,* if he so desires, and he shall be amply cared for." With the place exclusively in the possession and control of their son, the only reasonable way for them to be "amply provided for" was through an accounting by him for the proceeds of the place, either in kind or in money. He was doing neither when this suit was brought, and he is under no obligation to do either now under the terms of the decree.

The case of *Korne* v. *Korne,* 30 W. Va. 1, 3 S. E. 17, cited by counsel for appellee to maintain the view that there was no obligation on him to support the appellant elsewhere than on the premises, is not in point. In that case the express terms of the contract and the situation of the parties showed conclusively that the parents were to reside on the premises and in the same house with the son.

Not to further prolong this discussion, we are of opinion that this cause should be remanded so that the circuit court may, by appropriate proceedings, (1) ascertain the fair annual rental value of the premises involved, which, less the taxes, is hereby directed to be taken as equivalent to the net proceeds; (2) ascertain what amount will annually be necessary (counting from the date of the decree appealed from) for a reasonably comfortable support for Elizabeth Blose, and (3) provide, by a receivership for the farm and the recordation of a *lis pendens,* or in such other manner as may appear to the court satisfactory and safe, for the payment to her during her life of such sum, not to exceed the aforesaid rental value, as may be necessary for her support.

The record discloses an unfortunate state of feeling between the appellee, on the one hand, and his parents and some of his brothers and sisters on the other. It seems quite probable that others have been as much to blame as he for this situation, and that if family differences had not arisen he would have complied with both his filial and his contractual obligations. We do not overlook the fact that he has never in terms denied, but

has all the time conceded the right of his parents to a support from the farm, but the evidence satisfies us that, for some reason, he has not been living up to the plain spirit and purpose of his agreement, that his performance has not been commensurate with the acknowledgment of his obligation, and that if the construction of his contract is allowed to stand as declared in the decree he now asks us to affirm, his mother will be exposed to the danger of losing a substantial part of the consideration by which she was induced to convey her property to him.

The decree complained of will be affirmed in so far as it dismisses the suit for rescission and awards the costs of that cause to the defendant, and it will be reversed in so far as it dismisses the bill in the other suit, and the cause remanded for further proceedings to be had in conformity to the views expressed in this opinion. The costs in this court will be awarded to the appellant as the party substantially prevailing here, her appeal being necessary to correct the erroneous portion of the decree.

*Reversed in part.*