# CHARLESTON.

WILLIAM K. KINCAID *v.* ROBERT C. EVANS *et als.*

(No. 6377)

Submitted January 22, 1929.   Decided January 29, 1929.

*Jay T. McCamic* and *McCamic & Clarke,* for appellant.
*R. L. Ramsay* and *W. S. Wilkin,* for appellees.

MAXWELL, JUDGE:

By his bill plaintiff seeks cancellation of stock subscriptions in the sum of $8,000.00 and a personal decree for this sum against certain individuals who he alleges practiced fraud upon him in connection with said subscriptions. From a finding for the defendants on the merits the plaintiff appeals.

In the fall of 1919, J. W. Rowley, F. T. Hinds, Robert C. Evans, William Carter, H. C. McClelland, G. W. Wentz and George H. Weber, formed an unincorporated joint stock association known as Fort Steuben Oil Company with capital stock of $100,000.00, principal office at Wichita Falls in the State of Texas for the purpose of oil development in said state. It was provided in the articles of the association that the title to all property of the company should be held by a trustee for and on behalf of the company. In March of the following year the plaintiff became interested in this organization and invested $8,000.00 in its stock. Leading up to his investment in the company, plaintiff had conferences with the defendant, Robert C. Evans, president of the company, defendant G. W. Wentz, its promoter, and with others connected with the organization, and plaintiff says that it was through their misrepresentations of the holdings and affairs of the company and concealment of the true facts that he was induced to make the investment. The evidence is voluminous and contradictory. Different constructions are placed by the parties on certain phases of undisputed testimony. This opinion does not purport to recite all the details of the evidence, but the attempt is made merely to set forth the salient and controlling features thereof.

The defendant Wentz, then a resident of Follansbee and Weirton, West Virginia, now a non-resident and not served with process in this suit, was primarily responsible for the organization of this association. He awakened the interest of the other organizers and got them into the project. Most, if not all of the organizers, lived in Brooke and Hancock counties, West Virginia, and at Steubenville, Ohio. Some months after the organization was perfected plaintiff's attention was attracted to the company. He says that he was solicited by president Evans to buy stock in the company,

but Evans denies this allegation. Evans says that he was called on the telephone by plaintiff's brother, who said that plaintiff (calling him Bill) was interested in the company's oil proposition and that they would like to know when Evans was coming to Steubenville so they could see him; that he replied that he was going that night to Steubenville to see J. W. Rowley, defendant, secretary of the company, who then lived at Steubenville; that on his arrival at Steubenville that evening he was met at the station by plaintiff and his brother who accompanied him to the home of Rowley, where the affairs of the company were discussed at length. Rowley testifies that on that occasion, plaintiff "seemed to be anxious to get in on the proposition and talked of going down and looking the thing over." This conference resulted in plaintiff's initial investment of $1600.00 in stock of the company. Shortly thereafter when the stock was ready for delivery to Kincaid, Evans demurred at delivering it within the State of Ohio for fear he would be in violation of the "Blue Sky" law of that state. But, he says, the plaintiff insisted on its being delivered to him at Steubenville and said "that he (plaintiff) wasn't the kind of a fellow to say anything about it." Subsequent blocks of stock purchased by the plaintiff were also delivered to him at his office in Steubenville. Under these circumstances he cannot now be heard to complain that the delivery of the stock to him in the State of Ohio was in violation of the law of that state, and therefore a void transaction. Later the same month the plaintiff, defendant Robert C. Evans, and defendant Weber and his wife made a trip to Texas and inspected the company's properties. While there plaintiff agreed to invest $5,000.00 more in stock of the company and gave his check for that amount. This check was brought back to West Virginia and turned over to Robert C. Evans, who deposited it to his personal account in the Bank of Weirton. Plaintiff complains about this, but Evans says that plan of deposit was adopted in order to keep the funds out of the reach of defendant Wentz, who was then looking after the company's affairs in Texas, and in the opinion of Evans and others connected with the company it was advisable that Wentz's access to the company's funds

be somewhat curtailed. It satisfactorily appears from the evidence that a little later this money was transferred to the company's account in the Bank of Follansbee, and was through that instrumentality properly applied and used in the company's business. After the return from the Texas trip, plaintiff invested $1,400.00 more in company stock. He complains that as an inducement to him to become interested in the stock of this company in the first instance there was exhibited to him a plat purporting to represent the company's properties in Texas and the surrounding oil territories; that it showed oil wells apparently in the immediate proximity of the company's property which were in fact several miles away; that it showed more producing oil wells in the neighborhood of these properties than in fact existed; that it showed many wells with oil flowing out at the tops of the derricks as though they were "gushers". On behalf of defendants it is testified that this plat does not, in fact, show more producing oil wells than were at that time in existence in that neighborhood; that there were more such wells than the plat shows; that the markings at the tops of the derricks which the plaintiff interprets as indicating streams of oil are, in fact, intended to be flags or pennants indicating that the wells so marked are oil producing; that other wells disclosed by the plat are marked with cross-marks to indicate that they were then drilling. Further, he says, that the $5,000.00 check was given by him in Texas under an agreement by which he was to have stock of the company of the par value of $30,000.00 of which he was to sell such amount as he desired and was to have a commission thereon of twenty per centum. Apparently his commission was to be deducted from the amount which he was to pay for the stock. The $5,000.00 was paid on account. He says that he would not have entered into this arrangement and have paid the $5,000.00 or have paid the $1400.00 after his return to West Virginia, but for the fact that under date of March 16, 1920, in Texas, defendants Robert C. Evans, Weber, Wright, McClelland and Wentz executed to him a memorandum which recited, among other things, that the company was then the owner of five separate leases recited in

the memorandum. He says he acted on that statement as true, when as a matter of fact it was untrue; that the company did not then own the leases recited. The evidence justifies belief that the parties who signed that memorandum, other than Wentz, were relying on what Wentz told them about the matters, because he was then the trustee for the company and had been on the ground for some time looking after the company's affairs. It seems that he had then taken title to some of these properties in his own name, and not as trustee. This item would be substantial in support of the plaintiff's prayer for relief, but for his later activities in connection with the company's business.

On the 26th day of April, 1920, defendant Wentz resigned as trustee for the company, and on the 29th day of the same month plaintiff was elected his successor. The minute of his election shows that he was to receive a salary of one thousand dollars per month for his services. Early in May, plaintiff went to Texas and took charge of the company's matters, but he had trouble with Wentz who did not seem disposed to loosen his grip on the company's affairs. Soon after his arrival in Texas in the early part of May, plaintiff wrote a letter to Robert C. Evans telling him, in effect, that the affairs of the company were in very bad condition and that the rest of the directors would have to stick to him, or the whole matter would go under. Plaintiff remained in charge for about two months. On the 5th day of June, 1920, at a special meeting of the board of directors held in the City of Steubenville, there was passed a resolution reciting the imperative necessity of raising substantially $30,000.00 to discharge certain debts of the company, and authorizing president Robert C. Evans, and the trustee, the plaintiff, to execute a deed of trust on the company's properties to secure certain of the directors in their indorsement of notes of the company for the purpose of raising the necessary funds. Thereupon, notes were executed in the sum of $25,050.00. A deed of trust was executed by Evans on the said date and the same was forthwith forwarded to the plaintiff who executed the same in Texas on the 8th day of June. This trust covered six separate leases purporting to aggregate 160 acres.

The company failed to discharge these notes and they were paid off by the indorsers. In the late fall of 1921, the properties covered by the trust were sold at public sale under the trust by the sheriff of Wichita county to the defendant W. E. Wilson, who bid in the properties as trustee for the defendants, Davidson, Rowley, Weber, R. C. Evans and Jesse E. Evans, indorsers on the said notes. Plaintiff alleges that this transaction was in fraud of his rights, but we perceive no indicia of fraud in connection therewith. Plaintiff also complains that early in the existence of this company a large amount of promotion stock was issued to its organizers. This is admitted, but it is also uncontradicted that later, upon advice of counsel, this stock was all surrendered. We cannot perceive that the plaintiff was in any manner prejudiced thereby.

The defendant Wentz seems to have been largely responsible for many of the troubles of this company. All of the other individual defendants, as well as the plaintiff, lost heavily in this venture. Obviously these persons went into this matter expecting to share in the fabulous wealth of the Texas oil fields. Such was their hope and their belief. The plaintiff was probably just as anxious to get into the proposition as were any of the rest of his co-adventurers, and apparently his hopes were just as high as theirs. Their attention was held by the bright side of the project. Unfortunately they were doomed to disillusionment. The distinguished veteran chancellor who heard and determined this cause was unable to ascertain that any of the defendants served with process practiced fraud upon the plaintiff in order to have him become a purchaser of stock of the company. On the record as a whole, we cannot say that the finding of the chancellor is at variance with undisputed evidence or contrary to the plain preponderance of the whole evidence. It does not appear to us but that this plaintiff should share with the resident individual defendants his proper portion of this unfortunate loss. Authority need not be cited for the proposition that on a question of fact the findings of the trial chancellor will not be reversed unless plainly wrong. We affirm the decree of the trial court.

*Affirmed.*