Mrs. Elizabeth Hatten *v.* Walter Hatten, *Executor, etc., et al.*

(No. 6887)

Submitted February 24, 1931.  Decided March 3, 1931.

*Marcum & Marcum* and *W. T. Lovins,* for appellants.
*Hammock & Burgess,* for appellees.

Woods, Judge:

The widow of James Hatten brought this suit against her step-son, executor and sole beneficiary under the husband's will, for the purpose of having dower assigned and to recover one-third of the surplus of the personal estate.  The defense interposed was that plaintiff had deserted her husband, and therefore had no interest whatsoever in the estate.  On this issue the commissioner found that the plaintiff was "temporarily away from home for medical treatment and was not living separate and apart from him at the time of his death."  The chancellor overruled the exception to this finding, and entered a decree awarding plaintiff the relief prayed; hence this appeal.

Both plaintiff and James Hatten (who were married in November, 1927) had been formerly married—the plaintiff having divorced her husband a number of years before, and the wife of the latter having died. This couple took up their abode several miles from the railroad stop, Prichard, in the house then being occupied by James Hatten. It was a box house of two rooms and a lean-to kitchen. There was no outhouse; chickens roosted on the well frame, and the drinking water was impure. The plaintiff urged her husband to move to Kenova or Huntington for the winter, where the two of them would be more comfortable, and tentative plans were made to that effect. Shortly thereafter, the wife's hip became infected, and being advised that it might be the beginning of cancer, made a trip (January, 1928) to Cincinnati (the home of one of her daughters) for a medical examination. She wrote her husband on the 11th of that month about her arrival; that she was forwarding certain articles of clothing to him; and that she would be back in a few days. While at home she told her husband of the doctor's diagnosis, and with the former's knowledge, consent and approval she returned to Cincinnati for the purpose of treatment, it being understood that the husband would follow in a few days. In view of this departure and the facts that plaintiff had not returned to the country home prior to the death of her husband in September, 1928, defendant set up the claim of desertion, and to show intent he confronted the plaintiff with two letters which she identified. One was from Hot Springs (February 7, 1928) and the other from Pickens, S. C., (April 14, 1928).

From Cincinnati plaintiff went to Hot Springs, Arkansas, for baths. While there she received information that Hatten had told that on a night prior to plaintiff's trip to Cincinnati she had attempted to steal some bonds from around his waist. In view of this information, together with Hatten's failure to join her, or to expend anything for her support, and her condition, she wrote a letter in which she states, ''I never intend to return to Prichard and you.'' Soon thereafter she returned to Cincinnati where she remained until April. While at the latter city she made a trip to Kenova

presumably for the purpose of meeting her husband. While visiting her son at Pickens, S. C., she wrote the second letter upon which defendant relies. It is to the effect that while in Cincinnati she had received two deeds to be signed and acknowledged, and that she had returned them promptly. At this time she gave vent to her feelings regarding the accusation concerning the attempted theft of the bonds. Shortly before her husband's death, plaintiff went to New York City to attend to certain business matters; but on learning of her husband's illness she immediately returned to Kenova, and got in touch with someone at Prichard concerning her husband's condition; she was told the flux, with which he was suffering, had run its course. A morning or two later she read in the paper that he had been brought to Huntington to the hospital and had died.

Plaintiff states that she wrote her husband many letters in addition to those to which we have heretofore referred. That she destroyed all letters of a personal nature received by her. The defendant makes no statement that the letters introduced are the only ones in his possession.

Was there in fact a legal desertion? A voluntary withdrawal from cohabitation, concurrent with an intention to forsake and not return, constitutes such within the meaning of our divorce statutes. Courts, however, are slow to construe an extended absence on the part of either spouse, or mere words spoken at the time of departure or during absence, as amounting to a desertion. 9 R. C. L. 356. It has been the policy in this State to recognize the marriage status until broken down by clear and convincing proof. We have numerous decisions to the effect that a wife is not a deserter, where compelled to leave home because the husband refused to provide medical treatment. *Shriver* v. *Johnson*, 101 W. Va. 335; *Fuller* v. *Fuller*, 100 W. Va. 309. In the first case cited, the wife was weakened by childbirth and left home for treatment, which the husband refused to provide or furnish for her, and while she was away the husband died; and it was held that she was justified in leaving for medical attention and was not barred of her dower. In the case of *Stuart* v. *Neeley*, 50 W. Va. 508, the court held that the wife, who

was living separate and apart from her husband who was a habitual drunkard, was justified in such action, and that her absence did not defeat her dower right. The dower and distributive right of a wife are incidents of the marriage relation. The marriage status ceases only by operation of law. To justify a divorce on grounds of desertion, the evidence must be of clear and convincing character. *Dawkins* v. *Dawkins,* 72 W. Va. 789. And if the separation is by agreement, or if the husband assents thereto or acquiesces in the wife's separation from him, he cannot maintain suit for divorce on the grounds of desertion. Such separation does not amount to desertion or abandonment in law. *Bacon* v. *Bacon,* 68 W. Va. 748.

As already indicated a number of things had appeared to prompt the statement, "I never intend to return to Prichard and you." And in further explanation, plaintiff testifies that, at the moment of writing, she only meant that she would not come back to her husband as long as he continued to live at Prichard; that she did not mean that she would not come back to him if he would live any other place but Prichard. The cases of *Horkheimer* v. *Horkheimer,* 106 W. Va. 634, and *Devers* v. *Devers,* 115 Va. 517, and others, support plaintiff's contention that the expression in itself is not conclusive of intent to desert. Sometime after her return to Cincinnati from Hot Springs, plaintiff came to Kenova and 'phoned her husband to meet her. While not arriving on the evening designated, he did appear the following morning, plaintiff in the meantime having returned to Cincinnati. One of defendant's witnesses testified that sometime between February 25th and 29th, he made certain repairs to a house owned by James Hatten in the town of Prichard; and that Hatten gave him certain instructions concerning same, stating in effect that they were made to conform to the wishes of Mrs. Hatten. So, it would seem that up to this time the parties were agreeable and neither contemplated a separation. From the testimony of the postmaster at Prichard, it would seem that the trip to Kenova, above referred to, was in regard to the property at Prichard. This same witness states that plaintiff called another time (about a week before Hatten's death) concerning

her husband's condition, and that he told her he understood that her husband was some better.

Upon the foregoing evidence the commissioner, who knew the parties and the circumstances, and before whom the same was taken, found that the wife was temporarily away from home for medical treatment. The chancellor, in overruling the exception thereto, gave his approval to the commissioner's finding. As we have stated many times, peculiar weight must be given to his action in such cases. And even if we entertained doubt as to the correctness of the chancellor's findings on the questions of fact, we would not be warranted in disturbing the decree on the facts unless we were convinced that it is plainly against a preponderance of the evidence. *Linger* v. *Watson,* 108 W. Va. 180; *Davis* v. *Trust Co.,* 107 W. Va. 141; *Kincaid* v. *Evans,* 106 W. Va. 605; *McBee* v. *Deusenberry,* 99 W. Va. 176.

The decree of the circuit court will be affirmed.

*Affirmed.*