PRUDENCE HAUGHT WADE, *Admx. v.* CHARLES C. WADE
*et al.*

(No. 7821)

Submitted May 9, 1934. Decided May 29, 1934.

*Terence D. Stewart* and *Ezra E. Hamstead,* for appellant.
*Frank M. Brand* and *Frank Cox,* for appellees.

MAXWELL, JUDGE:

This suit is an outgrowth of family discord and has for its purpose the cancellation of a contract of settlement of a law action. The circuit court refused to cancel, and the plaintiff appealed.

The original plaintiff, Edward Haught, having died since the institution of this suit, the same was revived in the name of the present plaintiff, his daughter, administratrix, who is the wife of the defendant, Charles C. Wade.

In the law action Wade recovered verdict and judgment against Haught in the circuit court of Monongalia County for $1,541.00. The controversy involved house-

hold and other expenditures in the Haught home where Wade and his family have lived since 1909. On writ of error to this Court, the judgment was reversed and the verdict set aside because of error at the trial. *Wade* v. *Haught,* 112 W. Va. 469, 164 S. E. 662.

The case was set to be re-tried in the Monongalia cirsuit court November 14, 1932. On the 11th of that month, the contract of settlement was executed by Haught and Wade. Under the terms of the contract, notes in the amount of $1,000.00 were delivered to Wade who agreed to pay the unpaid costs of the law action. Further, the contract: "This to settle all the differences between the said Chas. Wade and Edward Haught up to this time."

On the 23rd of November, 1932, Edward Haught instituted this suit. The grievance of his bill is that because of infirmities of his advanced age, he did not understand the import of the contract and that consequently he was imposed upon.

The contract was executed at the Haught home late in the afternoon of the date mentioned. The instrument was prepared by George Degarmo, justice of the peace, long time resident of Monongalia County. He was taken in an automobile to the Haught home early that afternoon at the instance of Wade for the purpose of writing a contract. Degarmo went to Haught's room where the latter spent most of his time in bed. Mrs. Wade, who customarily looked carefully after her father's personal wants and business affairs, was there. Throughout the litigation, in both the law action and this cause, she has been hostile to her husband's claims. Degarmo was there about four hours. Misunderstanding had developed as to whether Wade should pay to Haught the amount of the costs which the latter had paid as an incident of the prosecution of the writ of error in the law action. Wade was in the room only a portion of the time while efforts were being made to determine a basis of settlement.

When Degarmo understood that the terms had finally been agreed upon, he wrote the contract. Wade executed it. Haught then signed by his mark which was witnessed

by Degarmo and by Claude H. Lemley who had remained in the car in which he brought Degarmo to the Haught home and who went into the house to act as witness when called by Degarmo. Degarmo and Wade both testify that before the contract was reduced to writing, Mrs. Wade asked her father, who was lying on the bed, what they should do. Wade testifies that the reply was: "Go ahead and do it." Degarmo's version of the reply of Mr. Haught is: "Go ahead and do whatever you want to do about it."

At the time of this transaction, Edward Haught was eighty-six years of age and very infirm. His hearing was bad and he had almost completely lost the use of his legs. Characteristically of old age, feebleness of mind and body had progressed together. The testimony of the witnesses is widely divergent as to whether Edward Haught knew what he was doing when he executed the contract. Mrs. Wade, Dr. E. W. Rose, who had rendered professional service to Haught, Gladys Lynch Taylor, who sometimes assisted in the household duties of the Haught home, Madeline Wade Kimble, eighteen-year-old daughter of the Charles Wades, and F. M. Efaw, a neighbor, testified in substance that the old man's condition was such that under the circumstances he could not have understood what he was doing. Opposing testimony was given by Claude Lemley, mentioned, Jarvis Wade, son of Prudence and Charles, Sanford Price, a neighbor, Charles C. Wade, George Degarmo, and Henry Delaney, a neighbor. It so happened that Delaney and Price called on Mr. Haught the day the contract was executed, the former before Degarmo arrived and the latter after the transaction had been closed. Both say in effect that they conversed with Mr. Haught in usual manner, that he seemed to understand what they talked about.

Mrs. Wade stated on cross-examination with reference to a conversation between her and her father the evening of the 10th or the morning of the 11th of November relative to the contemplated settlement: "I told pap about it and he said I must remember that the Supreme Court costs must be paid and if he (Charles Wade) would take these notes it would be all right to settle and get it out

of court." This has forceful bearing on the question of Mr. Haught's mental capacity and his knowledge and understanding of the pending adjustment.

We share the opinion of the trial chancellor that the evidence does not sustain the allegations of the bill. That Edward Haught was weak in body and mind there can be no doubt, but the specific testimony of witnesses for the defendant in our opinion clearly outweighs the more or less general statements of witnesses who testified on behalf of the plaintiff. But even if we were in doubt as to what we would decide as an original proposition, we would not be warranted on this record in disturbing the chancellor's finding. An appellate court must not reverse a finding of fact of a trial chancellor unless the same is against the plain preponderance of the evidence. *Hatten* v. *Hatten, Ex'r.,* 110 W. Va. 208, 157 S. E. 582, and cases cited.

Perceiving no error in the decree, we affirm the same.

*Affirmed.*