WILLIAM E. CHAMBERS *v.* EMMA J. ROPER *et al.*

(No. 8607)

Submitted September 9, 1937. Decided October 26, 1937.

*John T. Porterfield* and *Harry H. Byrer,* for appellant.
*E. L. Luttrell* and *Hugh S. Byrer,* for appellees.

RILEY, JUDGE:

This is a suit in equity, brought by William E. Chambers against Emma J. Roper and Kerney Roper, her husband, for the purpose of cancelling a deed, whereby the plaintiff had conveyed to Emma J. Roper a certain tract of land situate in Jefferson County in consideration of "the comfortable support and maintenance of the said William E. Chambers, during his lifetime, by the said Emma J. Roper, upon the real estate hereby conveyed." From a final decree, denying the relief prayed for and dismissing his bill of complaint, the plaintiff appeals.

In general, the bill of complaint was drawn on the theory that there had been a substantial breach of the contract and failure of consideration in that the defendants had made life so miserable that the plaintiff was compelled to leave the premises and seek a home else-

where. The answer sufficiently denies the material allegations of the bill, and by way of affirmative relief, prays that in case of a cancellation of the deed, the defendants be reimbursed for money, in an amount not less than $1250.00, spent for improvements on the farm. A replication was filed, denying the right of the defendants to reimbursement for any improvements, and further denying that the value of any improvements made by the defendants is in excess of $300.00.

The evidence is too involved to permit a detailed statement in this opinion. A general resume will suffice. The plaintiff is a retired telegraph operator, having been employed by the Baltimore and Ohio Railroad Company for thirty-three years, during which time he had saved $7,000.00. At the time of the happenings upon which this suit is based, he was about seventy-two years of age, weighed 120 to 125 pounds and was crippled in one arm and foot. The defendant, Emma J. Roper, was about forty-eight years old and weighed 160 to 175 pounds. During the fall of 1933, the Ropers were living on a farm located about one mile from Charles Town, known as the Elliott place. Sometime during the fall, Chambers met the Ropers. On the evening before Easter of 1934, he, together with a Mr. Claybaugh, stayed all night in the Roper home. On May 1, 1934, he began boarding with the Ropers. When he came to board with them, according to the cross-examination of Mrs. Roper, he had a black eye and explained, in effect, that he had been drinking at the home of his sister, Daisy, and had made a few remarks about his niece, Eva, in her presence, when Eva's husband came in; that he didn't know who hit him, but if Eva's husband, Charlie Gageby, did do it, "there was no man could live and leave a mark like that on him."

Shortly after plaintiff came to board with the Ropers, the parties entered into a rather general discussion about a home. Finally, the Ropers took the plaintiff to see various farms in Jefferson County. On August 29, 1934, the plaintiff purchased the tract of land involved in this suit. By deed dated September 11, 1934, and executed

on the same day, he conveyed it to Mrs. Roper, she also joining in the deed. It is important to note that this deed, besides reciting the consideration of the comfortable support and maintenance of the plaintiff during his lifetime upon the farm, contains an express reservation of a lien upon the real estate "to secure the said provisions hereinbefore referred to for the said comfortable support and maintenance of the said William E. Chambers during his lifetime by the said Emma J. Roper***." The Ropers and the plaintiff continued to live together on the Elliott farm until April 2, 1935, when they moved onto the tract of land in question. The plaintiff paid them for his room and board until December 31, 1934.

A careful review of the evidence shows an apparently ever-growing strained relation between the Ropers and the plaintiff, beginning shortly after the deed to Mrs. Roper and finally culminating in the plaintiff's arrest on a warrant sworn out by Mrs. Roper on March 30, 1936, resulting in the plaintiff leaving the Roper home never to return, except to obtain his laundry. It would indeed be unprofitable to recount in detail the many charges and counter charges made during the course of the trial. According to the plaintiff's evidence, he was a frail old man of amiable disposition and steady habits except that he became intoxicated on several occasions during the course of the time involved in this suit. On the other hand, according to the defendants' evidence, the plaintiff, when sober, was a perfect gentleman, but he had the habit of becoming intoxicated frequently and when intoxicated, he changed into a person of vile habits, licentious mind and belligerent disposition.

According to the plaintiff, on December 31, 1934, he called Mrs. Roper to his room and suggested that they dissolve "partnership". Mrs. Roper then flew into a rage, called her husband and threatened to sue the plaintiff for all that he was worth, and at that time the plaintiff had paid his board to date, and was prepared to move, but the defendants importuned him to stay. Mrs. Roper says that the plaintiff was drinking, though not drunk at that time.

Plaintiff further testified that about April 8, 1935, Mrs. Roper began to be quarrelsome and was insulting and unkind to him; that she objected to his standing behind the stove, and accused him of being too lazy to put wood into the stove; that there were not enough bed covers, and when he complained to Mrs. Roper an argument started between them, and, thereupon, Mrs. Roper struck him so that his head hit against a chair and caused a knot to raise up; that she falsely accused him of feeling her leg; that on the latter occasion he went out and stayed at the house of a Mr. Simpson and after going to Harpers Ferry and Washington, he saw his attorney, John L. Porterfield, a member of the Jefferson County bar who had prepared the deed in question, and was advised by Mr. Porterfield to try to get along.

The evidence introduced on behalf of Mrs. Roper is replete with instances of intoxication of the plaintiff. According to this evidence, the plaintiff, on occasions, resorted to the handling of a revolver and a knife; used insulting language towards Mrs. Roper; struck her; and made lewd and improper advances toward her. This evidence, if believed, standing by itself, would preclude the plaintiff from the relief sought.

In passing on this most difficult question, we are not unmindful of the fact that the rulings of the trial chancellor will not be disturbed unless clearly contrary to the evidence. *Saunders* v. *Huffman,* 119 W. Va. 31, 192 S. E. 297; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Wade* v. *Wade,* 115 W. Va. 132, 174 S. E. 787; *First Nat. Bank* v. *McCloud,* 112 W. Va. 537, 540, 165 S. E. 799; *Davis* v. *Davis Trust Co.,* 107 W. Va. 141, 147 S. E. 490; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620. But we are also not unmindful of the situation which existed between these two parties. As heretofore referred to, the plaintiff was an old man, weighing about 120 to 125 pounds and crippled. On the other hand, the defendant was an active woman about forty-eight years of age, weighing 160 to 175 pounds. We are alert to the fact that this defendant entered into the contract in question with her eyes open. On the occasion of their

first meeting, the plaintiff, according to Mrs. Roper, stated that he had been intoxicated and had engaged in a fight which resulted in his receiving a black eye.

If this were an ordinary contract, we would not hesitate to sustain the rulings of the trial chancellor; but the situation between the parties prompts us to make every reasonable effort to do equity between them. Plaintiff had used his life's savings in order to purchase the farm for the defendants. He did this in the hope of obtaining a home, and a home necessarily meant a quiet and peaceful one, where he would receive kindness and attention. The evidence clearly shows that these two parties could not get along; that as a matter of fact it would have been impossible for the plaintiff to continue to reside with the Ropers. That being so, unless he can obtain relief in a court of equity, he is in a situation of losing his life's savings and being thrown out in the world while the Ropers, without the necessity of rendering any further service under their contract, would retain a farm which cost $7,000.00. This court in construing these contracts has gone beyond their strict letter. In *Asbury* v. *Burford,* 115 W. Va. 756, 177 S. E. 780, 781, it was held that where the parties could not live together and the contract did not specify that the grantor should live at the grantee's home, the grantee was required to furnish maintenance at a place outside of the home. This attitude of this court shows that contracts such as this should be construed on the basis of a sound discretion to be exercised by the chancellor. In the instant case, the deed in question requires that the plaintiff must live at the Roper home. This is a condition, which, under the circumstances of this case, would be impossible.

What then should be done with this case? It should be solved in the light of the situation which existed between the parties litigant and of the sound discretion which resides in a court of equity in a case such as this. Generally, a contract between a grantor in a deed and a grantee providing for the maintenance and support of the grantor should be construed most favorably in favor of the grantor. *Blose* v. *Blose,* 118 Va. 16, 86 S. E. 911.

And where a grantor has parted with his property in consideration of an agreement for maintenance and support, and discord arises between the parties, a court should give to the grantor the benefit of all reasonable doubt and restore the property to him if it can be done without injustice. Black, Recission and Cancellation (2d Ed.), Vol. 1, section 168. In view of these well established and liberal views governing the construction and enforcement of a contract such as the one involved in the instant case, we think the ruling of the trial chancellor is not supported by the evidence. Therefore, his finding should be reversed. *Gall, Receiver, et al.* v. *Cowell et al.,* 118 W. Va. 263, 190 S. E. 130.

We are not unmindful that equity must be done between these parties. The Ropers have occupied the farm in question since April 2, 1935. The plaintiff was supported at their home until he departed on March 30, 1936. We are of the opinion that the deed from the plaintiff to the Ropers should be set aside and annulled; that the plaintiff should compensate the Ropers for his maintenance and support from December 31, 1934, the date he discontinued paying for his board, until the time he departed from the Roper home, and for improvements made on the premises; and on the other hand, the Ropers should account to the plaintiff for the reasonable value of the use and occupancy of the farm until possession thereof is surrendered to him. Only upon remand to the trial chancellor, can these matters be ascertained. We therefore reverse the final decree complained of and remand this case for further proceedings in accordance with the principles set forth in this opinion.

*Reversed and remanded.*