ROBERT E. FARRAR

*Individually, etc., et al.*

*v.*

MILDRED YOUNG, *Individually, etc. et al.*

*and*

ANN SHREWSBURY, *et al.*

(No. 13516)

Decided July 8, 1975.

*Hostler, Logsdon & Shinaberry, Sterl F. Shinaberry, David Burton* for appellants.

*Randall L. Veneri, Billy E. Burkett* for appellees.

CAPLAN, JUSTICE:

On July 23, 1970 R. S. Farrar, now deceased, executed and delivered a deed to Ann Shrewsbury, his granddaughter, and Larry Shrewsbury, her husband, whereby he conveyed to them certain real estate in Mercer County known as the Elgood property. On the same day those parties entered into an agreement under the terms of which, in consideration of the aforesaid conveyance, the Shrewsburys agreed to "provide a home for him [R. S. Farrar] for the remainder of his life, consisting of comfortable quarters and food * * *."

This controversy began when R. E. Farrar and Charles E. Farrar, sons and heirs at law of R. S. Farrar, instituted an action in the Circuit Court of Mercer County seeking to have the court cancel and set aside the aforesaid deed of July 23, 1970 and a second deed dated February 23, 1971. Two grounds were asserted by the plaintiffs in that action for the cancellation of the deeds. First, the brothers Farrar contended that there was a

failure of consideration for the conveyances of the real estate. In the second count of the complaint they alleged "the said R.S. Farrar was mentally incompetent, was not mentally aware of what he was doing, and was unconscious of the nature and consequences of his acts." Upon trial of this case before the court, a jury having been waived, an order was entered finding that R. S. Farrar was mentally competent to make the aforesaid deeds but further finding that there was a failure of consideration for the deed to the Elgood property. By reason thereof the court cancelled and set aside the deed of July 23, 1970. The February 23, 1971 deed was not disturbed by the court. It is from that order of the court that this appeal is prosecuted.

The matter of the competency of Mr. Farrar is not questioned or pursued on this appeal so the sole question for resolution is whether there was a failure of consideration which would warrant the cancellation of the subject deed.

From the evidence adduced at the trial it appears that R.S. Farrar, while living alone at his Blake home near the home of his daughter, Mildred Young, decided to move in with his said daughter. This was prompted by the alleged constant harrassment by his son, R. E. Farrar, and further by the reason of his apparent inability to adequately care for himself. Being dissatisfied with his plight at his home and his situation at the home of his daughter, Mr. Farrar conceived the idea of living on the Elgood property which he had formerly purchased, if he could find someone who would live with him and take care of him and the house.

In seeking fulfillment of this hope he approached his granddaughter, Ann Shrewsbury and her husband Larry and made the following proposition to them. He would deed the Elgood property to them if they would agree to provide a home for him for the remainder of his life. Upon their agreement to this arrangement Mr. Farrar went to his attorney in Princeton, West Virginia and requested him to draft the agreement and the subject

deed. On July 23, 1970 the deed was executed and delivered and the agreement was entered into.

Shortly thereafter the Shrewsburys moved on to the Elgood property and began to restore it to a liveable condition. The house had not been occupied for more than five years and required much restoration. They installed aluminum siding on the house; they painted; they fixed fences; the house was without water and they installed a waterline, plumbing and electrical fixtures; they panelled and celotexed; they built a back porch; and they made many other repairs and improvements.

During the latter part of August or the first part of September, 1970 grandpa Farrar moved in with the Shrewsburys and lived with them until about the end of the year. The circumstances of his departure from the Shrewsbury home are not clear from the evidence adduced but it appears that the Shrewsburys took him to Mildred Young's home temporarily for the reason that Mr. Shrewsbury's daughter was coming to visit them during the Christmas holidays. It is undisputed that Mr. R. S. Farrar did not again live with the Shrewsburys on a permanent basis, although he spent many weekends and was welcome to visit or to live there at any time. The record is replete with evidence showing that Mr. Farrar was always welcome at the Shrewsbury home but that he desired to live elsewhere. The evidence further shows unquestionably that R. S. Farrar was a man of strong will, that he did as he pleased and that when he decided to live elsewhere his decision was unshakeable. The evidence adduced from the two sons of Mr. Farrar does not dispute that of Mrs. Young or of the Shrewsburys. In fact, their evidence reveals that they saw very little of their father and actually knew very little of his circumstances. R.S. Farrar died intestate on July 26, 1972 and this action was instituted in December of that year.

As a consequence of the court's order cancelling the deed of July 23, 1970, the appellants assign the following errors: (1) the court erred in holding that there was a

failure of consideration, as such holding was contrary to the law; (2) the court erred in that such holding was clearly erroneous and contrary to the evidence; (3) the court erred in refusing to make a finding or ruling on the right of the appellants to reimbursement for the costs of repairs and improvement of the property in question; and (4) the court erred in failing to make specific findings of fact as required by Rule 52(a), W.Va. Rules of Civil Procedure.

Dispositive of this appeal is the question of whether there was a failure of consideration which would warrant the cancellation of the deed. That instrument provided for consideration in the following language: "for and in consideration of the sum of One Dollar ($1.00), and other good and valuable consideration, cash in hand paid by the parties of the second part unto the party of the first part, the receipt of which is hereby acknowledged * * *." It has consistently been held by this Court that the recital in a deed of the payment of consideration, irrespective of the amount thereof, is *prima facie* evidence of such payment and of the sufficiency of such consideration. *See, Oates v. Oates*, 127 W. Va. 469, 33 S.E.2d 457 (1945); *McCary v. Monongahela Valley Traction Company*, 97 W. Va. 306, 125 S.E. 92 (1924); *Hunt v. Hunt*, 91 W. Va. 685, 114 S.E. 283 (1922); *Bulick v. Milkint*, 90 W. Va. 509, 111 S.E. 310 (1922); 5 M.J. *Deeds*, Section 13; 23 Am. Jur. 2d, *Deeds*, Section 65. In *Lovett v. Eastern Oil Company*, 68 W. Va. 667, 70 S.E. 707 (1911), it was specifically held that the recital of one dollar constitutes valuable consideration for the conveyance of land.

There having been a recital, in the subject deed, of the payment and receipt of consideration and there having been no offer of evidence that the recited consideration was not paid or that there was any fraud involved, we hold that as a matter of law good and valuable consideration supporting the subject conveyance has been paid.

The appellees contended before the trial court, and that tribunal agreed, that there was a failure of consideration on the part of Shrewsburys in that they failed to

provide a home for R.S. Farrar in accordance with the provision of the agreement of July 23, 1970, alluded to above. Under the terms of that agreement the Shrewsburys agreed to provide a home for R.S. Farrar for the remainder of his life and agreed that he could have the unobstructed use of the land "throughout his life time".

At the conclusion of the evidence the trial court entered an order dated August 29, 1973, wherein certain findings were made and holdings announced. The court found that under the terms of the agreement the Shrewsburys agreed, among other things, "to keep and maintain him for the remainder of his life." Further, the court found that the Shrewsburys "refused to provide a home for him and to keep and maintain him." Based upon these findings the court "set aside, cancelled, annulled and held for naught" the deed dated July 23, 1970.

Upon consideration of the entire record we are firmly of the opinion that these findings of the court are wholly unsupported by the evidence. First, the agreement did not require the Shrewsburys to *keep and maintain* Mr. Farrar for the remainder of his life. It did require them to provide a home but they were not obligated thereunder to keep and maintain him wherever he went. It is obvious from the agreement and from the circumstances under which it was consumated that both parties contemplated that the home to be provided for R.S. Farrar was the home he conveyed to the Shrewsburys. This was positively acknowledged in the direct testimony of Robert E. Farrar, one of the plaintiffs. Therein, he answered in the affirmative when asked if under the contract the Shrewsburys agreed to take care of his father so long as he lived on the premises conveyed.

Second, our examination of the evidence reveals that there was no *refusal* by the Shrewsburys to provide a home for R.S. Farrar that would constitute a failure of consideration warranting the cancellation of the deed. The evidence reveals unequivocally that, except on two occasions, the Shrewsburys offered to provide a home for

R. S. Farrar in accordance with the terms of their agreement. During the Christmas season in 1970, Mr. Shrewsbury's daughter by a former marriage came for a visit at the Elgood home. On that occasion, because they did not have an extra bedroom, the Shrewsburys took Mr. Farrar to stay with his daughter, Mildred Young. This was to be a temporary arrangement, but for some reason, not fully explained in the record, Mr. Farrar did not again live permanently at the Shrewsbury home. The other time that Mrs. Shrewsbury did not take her grandfather upon request of her mother was occasioned by the fact that she and her husband were working and they felt that he should not be there alone. Mr. Farrar visited frequently at the Shrewsbury home and stayed many weekends. The record is replete with evidence showing that the Shrewsburys, other than noted above, did maintain a comfortable home for Mr. Farrar; that he was always welcome; that he received good food and friendly treatment; and that he chose to live there as he pleased or live elsewhere if he desired. As noted earlier in this opinion, none of this testimony is refuted.

It is uncontradicted in the record that the Shrewsburys intended to and did fulfill their obligations under the agreement. They provided a home for Mr. Farrar in which comfortable quarters and good food were furnished and in which he was welcome; they permitted him to continue to raise his cattle on the farm, as promised in the agreement, and assisted him in that endeavor; and, they permitted him free and unobstructed use of the land during his lifetime. Strongly indicating that the Shrewsburys were under no obligation to render to their grandfather any financial assistance was the last paragraph of the agreement which said that their obligation to him "shall not include hospital, medical, burial expense or administration cost." They could not force him to live in the home so provided; nor were they obligated to seek him out and keep and maintain him. This was a strong-willed man who obviously chose to reside elsewhere. Also, it is significant that Mr. Farrar

made no complaint during his lifetime. See *Florenski v. Smith*, 327 Mich. 502, 42 N.W.2d 234 (1950).

The appellants contend that the trial court erred, as a matter of law, in cancelling the deed for failure of consideration. They take the position that failure of consideration does not render a deed void. Furthermore, they assert, the evidence reveals, at most, only a partial failure of consideration, which under our law does not warrant the cancellation of a deed. They also maintain that the remedy of recission or cancellation of a deed, when the consideration therefor is support and maintenance of the grantor, is purely personal to the grantor and is not available to his heirs.

Early in the jurisprudence of our State this Court held that "Mere inadequacy of consideration is not in itself sufficient to justify a court of equity in setting aside a deed." *Jarrett v. Jarrett*, 11 W. Va. 584 (1877). That proposition still reflects the weight of authority, as demonstrated by the following language in 26 C.J.S., *Deeds*, §21:

> * * * as a general rule a deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration, and will nevertheless operate to convey title. * * * a deed will not be avoided or cancelled because the consideration agreed on is not paid, or because the grantee fails to perform a promise forming the whole or part of the consideration therefor * * *.

*See, Oates v. Oates, supra; McCary v. Monongahela Valley Traction Company, supra; Winfree v. Dearth*, 118 W. Va. 71, 188 S.E. 880 (1936); *Hunt v. Hunt*, 91 W. Va. 685, 114 S.E. 283 (1922); *Baughman v. Hoffman*, 90 W. Va. 388, 110 S.E. 829 (1922); *Munguia v. Piaz*, (Court of Civ. App. of Texas) 404 S.W.2d 47 (1966); 6 Thompson, *Real Property* (1926 Replacement), § 3124; and 23 Am.Jur.2d *Deeds*, §67.

There is respectable authority which holds that courts of equity tend to afford the grantor relief when the consideration for the conveyance is maintenance and

support of the grantor and the grantee fails or refuses to furnish such support. 26 C.J.S., *Deeds*, § 21; *Cales v. Ford*, 126 W. Va. 158, 28 S.E.2d 429 (1943); *Chambers v. Roper*, 119 W. Va. 338, 193 S.E. 570 (1937). Bearing significantly on that proposition is the following language found in 26 C.J.S., *Deeds*, § 21:

> The right of cancellation for failure to furnish support is personal to the grantor, and is not transferred to his heirs or devisees.

We are not in disagreement with the law of *Cales* and *Chambers*, cited above. In those cases the actions were instituted by the grantors, not their heirs. In *Chambers v. Roper, supra*, the grantor, an aged man, was deprived of his property and was left with no means of support. Equitable consideration demanded restoration of the property to him under the facts of that case. The fact that in each of those cases the grantor of the property sought relief meaningfully distinguishes them from the case at bar. It has been held that the intention of the parties controls and if the language of the agreement shows an intent to create a personal obligation, it will be so construed. 26 C.J.S., *Deeds.*, § 150; *Krahn v. Goodrich*, 164 Wis. 600, 160 N.W. 1072 (1917). Under the facts of the instant case the agreement clearly reflected an intention to create an obligation personal to the grantor and the right of cancellation of the deed could not be transferred to his heirs. The court committed reversible error in holding to the contrary.

For the reasons stated herein the judgment of the Circuit Court of Mercer County is reversed and the case is remanded for further proceedings in accordance with the principles set forth in this opinion.

*Reversed and remanded.*