EDGAR N. DWIGHT *v.* EDWARD HAZLETT *et al., etc.*

(No. 7079)

Submitted September 8, 1931. Decided September 29, 1931.

*R. A. Blessing* and *F. G. Musgrave,* and *J. M. Ritz,* and *J. J. P. O'Brien,* and *Fred H. Brinkman,* for appellant.

*Howard W. Friedrichs* and *Austin V. Wood,* for appellees.

MAXWELL, JUDGE:

Because of inadequacy of amount of recovery, the plaintiff appeals from a decree of the circuit court of Ohio County in his favor for $37,262.88 against the defendants. This case was before this court in 1929, the opinion appearing in 107 W. Va. 192. The amount of the decretal judgment there involved was $22,792.83. The decree was reversed because the same was entered upon agreement between counsel for the parties to the suit, it later being made to appear that counsel for plaintiff acted without authority in entering into such agreement. The second decree represents the same basis in amounts as the first with interest added.

The plaintiff was a customer of defendants, brokers, and of their predecessors from 1913 to 1922. In the latter year his stock, posted as collateral for certain notes, was sold because of his failure to pay the notes. The suit is for an accounting.

In 1920, plaintiff had acquired through the instrumentality of defendants as brokers 2790 shares of common stock of LaBelle Iron Works, a corporation, for which stock certificates had been issued in the name of plaintiff. There being then in contemplation a merger of LaBelle Iron Works, Wheeling Steel & Iron Company and Whitaker-Glessner Company into a new company to be known as Wheeling Steel Corporation, a stock dividend of sixty-six and two-thirds per

centum was declared on the LaBelle common. This was one of the steps incident to the equalization of the value of the common stocks of the constituent companies in order that upon the consolidation a· share of each could be exchanged for a share of the new company. Plaintiff's LaBelle stock dividend was 1860 shares. Plaintiff's 2790 shares had not been paid for by him. He had purchased it by paying a relatively small amount in cash and by executing numerous notes which were held by various banks with the certificates of stock as collateral security. It is contended by plaintiff that this stock was sold for him by defendants in 1920 for a sum which was $203,090.00 in excess of the borrowed money which was secured by the stock as collateral; also that there was another sale made by the defendants for the plaintiff of 540 shares of LaBelle common, held by plaintiff on a margin account, for a sum which was $28,619.65 in excess of the loans secured by that stock; that the total balance due him under these sales was $231,709.65. This sum with about eleven years interest, and the amount of the so-called Rogers account (hereinafter more particularly discussed) with interest, aggregate about $421,000.00 and form the basis of plaintiff's claim.

Three thousand one hundred and twenty shares common stock of the new company, Wheeling Steel Corporation, were acquired by the defendants presumably for the plaintiff. Plaintiff says, though, that, whereas it was the arrangement between him and the defendants, his brokers, that they should sell his LaBell at the market price of around $156.00 per share and buy for him Wheeling Steel common on the market, and at the prevailing price, and although the defendants reported to him from time to time such purchases of Wheeling Steel, that it has later appeared that the defendants did not purchase for plaintiff Wheeling Steel common on the market, but that they from time to time transferred to his account certain of their own holdings of "constituent" stock which could be exchanged for Wheeling Steel common if and when issued. This "constituent" stock was in fact later exchanged for Wheeling Steel when it was issued. Plaintiff seeks to repudiate this entire acquisition of 3120 shares of Wheeling

Steel. He relies here on that principle of law found generally in the books dealing with such matters and concretely stated in 6 Thompson on Corporations, (3rd Ed.), section 4135: "Thus a stock broker employed to purchase stock for a customer cannot buy of himself and when such a transaction comes to the knowledge of the customer he may repudiate, though the transaction may have been beneficial to the customer." This principle of law is sound, but we concur in the finding of the trial court that the facts relied upon by the plaintiff in support of this point do not sustain him. While it does not appear from the testimony of defendant, Henry L. Hazlett, now the owner of the brokerage business of Edward Hazlett & Company, or from the records of the said brokerage firm that the said 3120 shares of Wheeling Steel common were purchased by the defendants specifically for the plaintiff, it does appear, uncontroverted, that at about the time the brokers were acquiring Wheeling Steel common, or rights thereto, for the plaintiff they were also making similar acquisitions for others of their customers; that the market price of the latter named stock was then $100.00 per share, and that such was the basis upon which they filled plaintiff's order, plus $1.00 per share brokerage fees. It does not appear, within the meaning of the said principle of law sought to be invoked by the plaintiff, that this was a sale by the defendants of their own stock to the plaintiff.

Plaintiff insists, further, however, if the court is of opinion that the said block of 3120 shares common stock of Wheeling Steel Corporation was in fact purchased by the defendants as brokers for the plaintiff, and therefore that plaintiff's first proposition is not well taken, that, at the very least, it must be found that a secret profit inured to the defendants by reason of said transactions. He analyzes the matter thus: That the original LaBelle stock (after two-thirds stock dividend had been declared) was worth $166.66-2/3 per share. The LaBelle stock (including the stock dividend shares) was exchangeable for Wheeling Steel common ($100.00 par) on a dollar for dollar basis; that the original LaBelle stock was selling for $156.00 per share, each share carrying with it the

two-thirds of a share which had been issued as a stock dividend; that is to say, the sum of $156.00 was the price of five-thirds of a share of LaBelle, or the price per share was $93.60; that under the merger plan he was entitled to exchange this stock share for share for Wheeling Steel common, and, therefore, when defendants acquired the latter stock and turned it over to him at $100.00 per share they were realizing a secret profit of $6.40 per share. Plaintiff asserts his right to recovery of this amount on each of the 3120 shares, being a total of $19,968. We think the trial court was right in disallowing this claim, and for the following reasons.

It appears from the record that the plaintiff, himself a merchandise broker, had had wide experience in dealing in stocks. He had been buying LaBelle common since 1913. He must be deemed to have dealt knowingly. If he had held his LaBelle stock until the consummation of the merger he would have been entitled to exchange it share for share, including that which he had received as a stock dividend, for stock of the newly organized Wheeling Steel Corporation. But he was not willing to take that course. He preferred to sell his LaBelle on the market, at the market price, presumably to take advantage of the then prevailing price of LaBelle. At the same time, his orders for purchase of Wheeling Steel common could not be filled because that stock had not then been issued. The most that his brokers could do in that particular at that time was to purchase stock in some one or more of the three companies that were to go into the merger, this constituent stock to be exchangeable for Wheeling Steel common if and when issued. By this means plaintiff relieved himself of risk, if any there was, attendant upon failure of the merger to be consummated. The risk, if any there was, was by this method transferred to the brokers. In the light of Dwight's extended experience he must be deemed to have perceived the effect of this course of dealing and to have acted in the light thereof. He, therefore, cannot now be heard to assert that the differential in favor of the brokers under the set-up which the plaintiff himself thus arranged is a secret profit.

Laura I. Rogers was bookkeeper for the plaintiff in his brokerage office. She began in 1916 to deal in LaBelle stock, and, upon organization of the Wheeling Steel Coaporation she acquired by exchange of her LaBelle stock and by direct pur-chase a considerable block of Wheeling Steel common. Just as with Mr. Dwight she owed a large portion of the cost of this stock. Her indebtedness was represented by notes for the security of which her stock was posted as collateral. Upon default in payment of the notes, the collateral was sold. After the sale of this collateral and the application of the proceeds as a credit on her indebtedness there remained a deficit in her account of $22,777.56 as of September. 28, 1920. The defendants were carrying this account. They charged this deficit to Dwight October 1, 1920. They did this because they say the Rogers account was in fact Dwight's account carried in the name of Rogers for the convenience of Dwight. Defendant Henry L. Hazlett and Joseph Jefferson, a salesman in the brokerage office of Edward Hazlett & Company, both testify that the account in fact was the plaintiff's, and they introduced certain record evidence tending to support their contention. Both the plaintiff and Miss Rogers (now Mrs. McKenney) testify unequivocally that the Rogers account was not in fact Dwight's account, and they likewise introduced record evidence tending to sustain their contention. On this pointed and irreconcilable conflict of evidence the trial chancellor sustained the position of the plaintiff, that is, that the Rogers account was not in fact Dwight's account, and therefore that the Rogers deficit was improperly charged against the Dwight account. This item and an item of $13.51 admittedly owing by defendants to plaintiff, constitute the bases of the two decretal judgments which have been entered by the circuit court in this cause, as explained in the first paragraph of this opinion, the first judgment being without interest and the second one with interest. The defendants assign as cross-error the action of the trial court in finding for the plaintiff in any sum in excess of $13.51, with interest. We find though that the trial chancellor's holding that the plaintiff is entitled to recover under this branch of the case is supported by substantial evidence and is in no sense con-

trary to a plain preponderance of the whole evidence. Under well settled principles this finding should not be disturbed on appeal. *Stansbury* v. *Bright,* 109 W. Va. 651; *Kincaid* v. *Evans,* 106 W. Va. 605. We are of opinion that the trial chancellor was well warranted in his holding that the defendants improperly charged the Rogers deficit to Dwight and that he therefore is entitled to a recovery. And by the same token we find that the trial chancellor, having properly held that the plaintiff was entitled to recover of the defendants for the improper charge of the Rogers deficit to his (Dwight's) account was not warranted in eliminating from Dwight's recovery the item of interest and carrying charge, incident to the Rogers deficit, and likewise charged against Dwight subsequent to the time that the Rogers deficit was placed in the Dwight account. These items amount to $5,053.14 as of April 11, 1922, which was the date that Dwight was sold out and his account closed, leaving, as defendants contend, a balance in Dwight's favor of $13.51 as of that date. Whether these items making up the $5,053.14 were proper charges against the Rogers account need not be determined, for, whether right or wrong, (presumably they were correct), they were charged against Dwight and he was not liable for them.

Defendants say that if the court should be of opinion that plaintiff is entitled to a recovery because of the transfer to his account of the Rogers deficit with interest and incidental charges defendants should be given credit for the sum of $2,334.71 paid by defendants to Dwight June 13, 1919, and for the sum of $786.43 for which amount Dwight was given credit as a transfer from the Rogers account November 4, 1920. Defendants say that the payment of $2,334.71 should have been made to Miss Rogers if the account in her name did not in fact belong to Dwight and that Dwight therefore improperly received the same and should now be required to account for it. This claim cannot be sustained because it is not clear from the record that the payment was made by defendants on account of a credit due from them to the Rogers account rather than to the Dwight account. The second credit claimed, namely, $786.43, we think should be allowed, because, as we understand the record, it appears without question that the

plaintiff received credit for the said amount November 4, 1920, as a transfer from the Rogers account.

The amount of the trial chancellor's decree should be enlarged. We adopt the following bases: Three items, $22,-777.56, $5,053.14, and $13.51 as of April 11, 1922, less charge of $786.43 with interest from November 4, 1920 to April 11, 1922, making net total $26,976.41 as of April 11, 1922, which sum, with interest to the date of the decree in this court, amounts to $42,299.02.

We therefore modify the circuit court's decree by enlarging the amount of the recovery from $37,262.88 to $42,299.02 and as modified we affirm the same, and enter decretal judgment here for the said larger amount.

*Modified and affirmed.*