## CHARLESTON.

MORGAN *et al. v.* SNODGRASS *et al.*

Decided March 30, 1901.

1. DEED OF MARRIED WOMAN—*Recorded.*
    A deed of a husband and wife for her separate real estate, duly executed, acknowledged, and delivered, is good between the parties, though not recorded.   (pp. 390-393).

2. MARRIED WOMAN—*Separate Estate—Acknowledgment.*
    A deed from a married woman for her separate real estate, signed and acknowledged by the husband, is good, though he is not named as a grantor or otherwise in the body of the deed; but it is not good unless acknowledged by both.   (pp. 394, 395).

Appeal from Circuit Court, Wetzel County.

Bill by I. D. Morgan and H. L. Smith against C. A. Snodgrass and others.   Decree for defendants, and plaintiffs appeal.

*Reversed.*

A. B. FLEMING, U. N. ARNETT, JR., and T. P. JACOBS, for appellants.

W. G. SNODGRASS and C. A. SNODGRASS, for appellees.

BRANNON, PRESIDENT:

The facts of this case are as follows:   Drophy Walters, a married woman, owned a tract of fifty-six acres of land in Wetzel County, and she and her husband conveyed it to a son, L. S. Walters, by a deed never recorded, but lost or destroyed.   While

L. S. Walters owned the land he leased it for oil purposes to the South Penn Oil Company, and that company took possession and bored four wells, three of them producing wells. The Eureka Pipe Line Company has its pipe lines on the land carrying oil from these wells. Afterwards L. S. Walters took a second deed from his mother. L. S. Walters conveyed to H. L. Smith, and he conveyed half the tract to I. D. Morgan. After all this Drophy Walters, then widowed, conveyed the same land to C. A. Snodgrass, and he brought an action of ejectment against the South Penn Oil Company and the Eureka Pipe Line Company to recover the possession from them of the land. Then Smith and Morgan brought this chancery suit against Snodgrass and others to set up or restore the said lost deed from Drophy Walters and her husband to L. S. Walters, and declare it subsisting still and valid, and to declare the second deed between the same parties a valid contract of sale of the land, and to enjoin the further prosecution of said ejectment, and enjoin Snodgrass from using the deed from Drophy Walters and her husband to him as evidence of title, and to cancel the deed as a cloud over the plaintiff's title, and to enjoin Snodgrass from asserting any title under said deed, or interfering with the possession or operation of the South Penn Oil Company.

The decree dismissed the suit without relief to Smith and Morgan, and they appeal.

Is the lost deed utterly void because it was not recorded? If it is, then Walters and the plaintiffs claiming under it have no property under it, no right vested recognized by law, so as to call on a court of equity to exercise its anscient jurisdiction to give relief against accident by repairing the loss of the deed.

Doubtless most lawyers, at first blush, would answer that the deed is a mere nullity. They would do so upon the principle that by common law a married woman could not contract, could not convey her land, except by fine and recovery, and since that has been substituted by the process of privy examination, she can only convey in that mode pointed out by statute, and that her deed is good only so far as the statute makes it good; that while a deed from another person becomes good on delivery, a married woman's deed requires a further element, recordation, by the very letter of section 6, chapter 73, Code 1887, in force when this deed was made, saying that "when the privy examination,

acknowledgment and declaration of a married woman shall have been so taken and recorded in the office of the clerk of the county court; or when the same shall have been so taken and certified as aforesaid, and the writing to which such certificate is annexed, or on which it is, shall have been delivered to the proper clerk of the county court and admitted to record as to the husband as well as the wife, such writing shall operate to convey from the wife "all her dower, and right, title and interest of every nature in the real estate conveyed thereby." Many cases announce the general doctrine that a married woman can only convey in the mode prescribed by statute, and in enumerating the elements necessary they include with signature and privy examination and acknowledgment, recordation. *Leftwich* v. *Neal,* 7 W. Va. 576; *Rollins* v. *Menager,* 22 *Id.* 461; *Nickell* v. *Tomlinson,* 27 *Id.* 697; *Rosenour* v. *Rosenour,* 47 W. Va. 554, (35 S. E. 918); *Sewall* v. *Haymaker,* 127 U. S. 719. Many other cases can be found in which this general statement is made; but in not one case, I think, was the very point adjudged in Virginia or West Virginia, unless we except *Rorer* v. *Roanoke Bank,* 83 Va. 589, 4 S. E. 820. The gross wrong prevented in that case by such construction, as will appear in the case, largely explains it. In that case the court construes the statute as requiring recordation to pass title. Now, I confess that the letter of the statute says this; but what is its spirit, its true meaning? The wife by signing, sealing, acknowledging and delivering the deed has shown her full and final will to convey. All legal safeguards have been complied with for her safety. Until delivery that will has not been manifested, she can stop; but after delivery she has parted with the deed, it is an evidence of ownership in the grantee to do with it as he pleases. He may cause it to be recorded. She had nothing to do with that. She cannot prevent that act of the clerk, a purely ministerial act which the grantee may call upon the clerk to perform. I assume she cannot revoke after delivery and prevent recordation. If the other construction is true, she can; but I suppose no one will say that the legislature meant to give her a right to commit so flagrant a wrong. That act is performed for the benefit of a grantee. Where is the title between delivery and recordation? Is it in a state of suspended animation? Is it in the clouds, or is it in either the woman or her grantee? If still in the woman, the deed when recorded does not take effect from its date; or does it retroact to the date? I say

that it is in the grantee. But there is the letter of the statute. What do you do with it? I assume that it should be held directory as to this recordation feature; that recordation is a nonessential as between the parties, but not as to creditors and purchasers. I think the excellent definition of a directory statute given by Cooley's Const. Lim. 77, will justify our treating this feature of the statute as directory: "Those directions, which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory." In *Christy* v. *Birch,* 25 Fla. 942, the statute involved said that the property of the wife "shall only be conveyed by the joint deed of the husband and wife duly attested, authenticated and admitted to record," and it was held that "the statute did not intend to make invalid, *as between the parties,* thereto, a deed otherwise in accordance with the statute though not recorded." The court, by Chief Justice McWhorter, said: "The language of the statute as to recording the deed would almost seem to be imperative, yet it is impossible to conclude that the legislature, whose only object was the protection of the wife, should make the title to her vendee dependent upon his acts or omissions after she had made the deed to him to the property, and which acts or omissions could not in any possible way affect her interest. If she had sold the property and received the purchase money for it, she was protected as far as there was any need of protection, and it was a matter of indifference to her interest what the purchaser did with his deed.

"We think that the only reasonable construction of the act is that the portion of it alluding to the recording of the deed from a married woman is not intended to affect the validity of the deed as between the married woman and her husband, the grantors and their vendee, but can allude only to subsequent purchasers. We feel clear that this is the proper construction of the act. To hold otherwise would be to say that a purchaser from a married woman held his title upon a condition which was not mentioned in the deed and the happening or non-happening of which was a matter of the utmost immateriality to her interest.

"A deed must be in existence and in the hands of the recording officer before it can be recorded. No time is fixed by the law within which it must be recorded. The vendee may delay its

record to suit his convenience. If it should be duly executed by a married woman and is lost, this loss alone, if the position of appellant's counsel is true, would operate as a reversion of the property to the grantor. It could not be recorded because it was lost, and it could not be re-established because it. had not been recorded."

This recordation provision was wisely omitted from section six, chapter 73, of the Code by chapter 73, Acts 1891, as will be seen from the section as printed in the Codes of 1891 and 1900, and therefore since the act of 1891 a deed or writing for the conveyance or sale of land in which the wife and husband unite, if properly executed and acknowledged by both, is good beyond question, though not recorded, between the parties and their heirs, though not as to creditors and purchasers for valuable consideration without notice. Why was that requirement of recordation kept in the statute until 1891 through so many years and changes? Why retain it when the recordation could do the woman no good, unless the legislature meant (as it surely did not) to let her get the grantee's money and then defeat her conveyance by forbidding its recordation? I think its presence is only to be thus explained. By common law a married woman could only convey land by a proceeding in a court of record called fine and recovery. This had to be evinced by record. Virginia passed legislation allowing her, on privy examination before a court of record or two justices, to acknowledge the deed, and then it was to be recorded, with such examination in court or in the office. It was settled under the common rule while fine and recovery was the mode in England and acknowledgment before a court in Virginia, that the acknowledgment and examination could be shown only by record. This recordation was thus born and when acknowledgment before a court ceased, and one before an officer was substituted, it was simply kept in the statute—handed down—without reason for its continuance. The strongest reason for such continuance is that this recorded acknowledgment was to take the place of the old acknowledgment before a court and its record. Why is not the justice's certificate such evidence? Does the clerk's act add anything to it? We may not unhesitatingly say that as the reason of the provision has ceased, the clause itself ceases, because it remained in the statute; but this maxim affords reason to say that the clause is only directory and non-essential.

I have stated that many cases settle it that a married woman can convey only in that mode prescribed by statute. That rule applies and should be limited to those parts of the execution of the deed in which she participates, and designed for her protection, the privy examination, the legal certificate giving the required elements of that examination, and her delivery of the deed; but how does the reason of that rule apply to the act of the clerk in recording? And in this connection I say that I know that the general rule is that equity will not aid to cure defects or supply omissions in the privy examination and certificates to deeds of married women. That is the extent to which the cases go. *Leftwich* v. *Neal,* 7 W. Va. 569; *Laidley* v. *Land Company,* 32 *Id.* 134; *Bank* v. *Paul,* 75 Va. 594; *Wynn* v. *Southand,* 86 Va. 946. But I think that rule does not apply where the lack is only recordation. It seems a mockery upon that justice which should be meted out by a court to give a construction to a statute which would, for a want of mere recordation of a deed otherwise perfect, defeat its effect, defeat the intent of parties, rob a purchaser of his just rights, and allow a gross and crying wrong to be done him. Here is a case where a deed is made and delivered, and possession under it for eight or nine years. Under it an oil company has bored four wells, costing thousands of dollars, and when by this outlay it has developed oil, Snodgrass, with actual knowledge of its rights and the rights of its lessors, as evinced by the deed to him, and if that were not so, with legal notice from possession and admitted actual notice of the oil works on the land, steps in and for the pittance of fifty dollars gets a deed from a weak woman, so illiterate that she does not write her name, and is to take the land from Smith and Morgan and the oil company and call them to account for the rents and profits, including oil. I thnik Walters got legal title by this lost deed; but it is not necessary to say so. When that deed was delivered he had some property right in it, and inchoate right which he might consummate by record, at any time, as the statute gives no limit. He loses the deed. He calls on equity simply to repair the loss by placing him where he was, and making good his right by an injunction based on his equity to restrain a wrong upon him. Suppose a man is on his way to the clerk with his deed in his pocket, and he is drowned crossing a river, and his deed is lost, or it is burnt up in his house, or stolen by even the woman. He loses his land,

according to the other view.  Will equity permit this? It does
seem that it should not.  Snodgrass by answer admits that he
knew of the South Penn's works on the land, but denies notice
of the deed.  He does not go on the witness stand to deny it.

Another question.  Smith and Morgan say that the second
deed is good as a deed, and good as executory contract for the
sale of the land, and that it is a defense to the action of eject-
ment by the statute of equitable defense to ejectment, Code 1891,
chapter 90, section 20, and that this gives ground for injunction,
as it was recorded before Snodgrass purchased, and he admits
actual knowledge of it.  Snodgrass opposes this claim by the
position that our statute provides that no married woman can
convey or sell her land "unless her husband consents thereto by
joining in the deed or other writing by which the same is sold
or conveyed."  It is claimed that the husband did not legally join
in this deed.  It is a deed naming only Drophy Walters as
grantor and L. S. Walters as grantee, not at all in any part of its
body naming her husband as a party or in any wise.  It is, how-
ever, signed by both.  The case of *Adams* v. *Medsker,* 25 W. Va.
127, and others are cited to support this position.  That case
holds that a deed not mentioning certain persons, though signed
and acknowledged by them, is inoperative as to them.  This is
clearly so as to grantors and grantees; that is, where they are to
grant or to take estate by the deed.  But this rule does not apply
where such is not the case, and where the only requirement is
that the person manifest his consent to the deed.  The husband
has no estate to convey.  He has contingent curtesy.  Whether
this deed passes that we do not say.  It is always better convey-
ancing to make him a formal party, so as to pass his estate by
curtesy.  The husband, for our present question, is to be held,
not as granting anything, but simply consenting to his wife's
grant.  The second edition of that great work, American and
English Ency. Law, Vol. 9, page 111, makes this distinction ex-
plicitly, saying that where the husband has a vested interest to
pass he must be named as a grantor; but where it is only neces-
sary to manifest his consent, he is not a grantor, and whilst he
must join in the instrument, "he need not be named as such
(grantor) in the body of the deed; joining in the execution is
alone sufficient."  See first edition same work, Vol. 5, page 428,
n. 5.  See 3 Washb. R. Prop. 273; *Schley* v. *Pullman Co.,* 120

U. S. 575; *Hill* v. *Bearse,* 9 Allen 403; *Stone* v. *Montgomery,* 35 Miss. 83; *Elliott* v. *Sleeper,* 2 N. H. 525; *Thompson* v. *Loverlin,* 82 Pa. St. 432; *Ingoldsby* v. *Juan,* 12 Cal. 564; *Friedenwald* v. *Mullen,* 10 Heisk. 226.

When one signs a note or bond saying, "I promise to pay," it binds any number who sign. *Holman* v. *Gilman,* 6 Rand. 39; 1 Daniel, Nego. Inst. s. 94. In that case signature evinces consent and obligation. Why should it not evince consent in this case, where that is all the statute requires? Why make a formal party to the granting clause of one who grants nothing?

Another question. Another point made against the efficacy of the second deed to L. S. Walters from his mother is that her husband did not acknowledge it. It seems that with force it might be said that as the consent of the husband to the wife's deed is all that the law in Code, section 2, chapter 66, requires, he passing nothing, acknowledgment by him is useless; that acknowledgment is essential where, as to the party recordation is necessary to affect his creditors and purchasers from him—that is, where his estate is passed by the instrument; that a grantee in a deed does not acknowledge it, because he passes nothing from purchasers and creditors, and no recordation as to him is necessary; in short, that it is only where the party passes an estate by the deed that acknowledgment is necessary. There is much force in that view in the policy of upholding and making effective papers which the parties meant to be effective, and to prevent their overthrow from mere accidental omission. The doctrine has been sustained in Tennessee in holding that if a husband sign, he need not be a party conveying or covenant or acknowledge. *Mount* v. *Kesterson,* 6 Coldw. 452; *Friedenwald* v. *Mullen,* 10 Heisk. 226. The opinion in the former case almost convinces me that it is right. It is on the principle that the act in requiring the husband's acknowledgment is directory. But as above suggested in discussing the subject of recordation, I concede the necessity and essentiality of those things that form part of the act of husband and wife, which they can do or not do as they please. I think that all things which the law requires the wife to do to finally and forever show her intent must be done and so things which the statute requires to show the final intent of the husband to consent to his wife's act, must be done. Then, does our statute law require that a wife's deed of her separate estate shall be acknowledged by the husband?

It has always been so understood, I think properly. Section 3, chapter 66, Code 1887, required the husband to join. Section 4, chapter 73, provides only for the privy examination and acknowledgment of the wife, not of the husband; but section 6, chapter 73, saying that when the deed shall be admitted to record as to both, (and it cannot be without acknowledgment by both) it shall be effectual, we are led to the conclusion that our statute law requires, not merely that the husband shall show his assent by signing, but shall finally show it by acknowledgment. This is his final act to manifest his assent. Besides, it protects others by official attestation of his assent. I think many decisions in this State, if not pointedly deciding, go to uphold this construction. So, this second deed has no legal force for any purpose for want of the husband's acknowledgment. It may also be bad because the certificate of the wife's acknowledgment does not identify her to be the wife of Jacob. Nor does the deed call her such. *Merritt* v. *Yates,* 71 Ill. 636.

Therefore, we reverse the decree and remand the case to the circuit court with direction to enter a decree in accordance with the decision herein contained. The decree to be entered in the circuit court should reserve any right of Snodgrass to a life estate in the land, if any he has.

*Reversed.*