322 S.E.2d 482

**Leona McELWAIN, et al.**

v.

**Verlin E. WELLS, et al.**

**Thomas A. McGEE, et al.**

v.

**Verlin WELLS, et al.**

No. 15856.

Supreme Court of Appeals of
West Virginia.

June 12, 1984.

Rehearing Denied July 11, 1984.

owned by the party of the first part and containing 144 acres, more or less, the same being the home farm of Michael and Sylvia McGee. The United States Government forest land adjoins the 35-acre tract herein conveyed on its northeast.

It is covenanted and agreed between the parties hereto that the boundary of the 35-acre tract herein conveyed shall be determined by an accurate survey to be conducted upon the premises.[2]

On April 22, 1978, McGee conveyed to Verlin Wells, Mark Wells and Elizabeth Julian two tracts of land for $200 per acre, to be determined by survey. The deeds, recorded on April 24, 1978, describe the property by feet in each direction from adjoining property owners and a state road. The final phrase in the first deed is: "the amount of acres to be determined by survey, after the thirty five acres have been surveyed to Leona McElwain on the East side of this land." McElwain's thirty-five acres had then not been surveyed. The second April 22 Wells deed covered acreage described in a similar fashion, from the same 144 acre tract, and mentioned that there was a "six room farm house, being the same farm house of Michael and Sylvia McGee," on the land. In the declarations of consideration or value attached to the deeds, the first property was valued at $10,600 and the second at $4,900.

Verlin Wells hired Leon Mallow to survey the land deeded to him by McGee in the April 22, 1978 deeds. His survey was completed in May, and Wells informed people residing on the property that they had to vacate and take their personal property with them.

Milford L. Gibson, Wallace, Ross & Gibson, Elkins, for appellant.

William D. Levine, Marshall & St. Clair, Huntington, for appellee.

HARSHBARGER, Justice:

By a deed dated April 8, 1976, recorded August 17, in Randolph County, Thomas A. McGee[1] conveyed to his niece Leona McElwain,

> a certain tract or parcel of land lying and situate on the waters of Lights Run in Valley Bend District, Randolph County, West Virginia, containing 35 acres, and upon which is situate a four-room house and a two-room cabin, said tract of 35 acres being situated along the eastern side of a larger tract or parcel of land

When McElwain found out about the Wells deeds, survey and oral notices to vacate, she visited her attorney who advised her to get her tract surveyed. So, in June, 1978, Jerry Shreve made a plat for the land deeded to her. His metes and

---

1. Thomas McGee died in February, 1983. There has been no substitution of parties.

2. This description reminds this writer of one said to exist in the records in Cabell County: "Beginning at where I sit on a spotted horse ...."

bounds dimensions were put in a new deed to fix the location, shape and size of the property conveyed to her in 1976, and it was recorded on August 18, 1978. The declaration of consideration stated that it was exempt from payment of excise tax because it was a surveyed correction and completion of a former deed between the parties. Another deed for an additional ten acres, described by metes and bounds and declared to be worth $800, was also recorded at that time.

A fourth deed, dated September 28, 1978 from McGee to McElwain, conveyed another four acres and the rest of the family farm, about twenty-five acres. The description was from Shreve's survey; the consideration was $2,000.

Stephen Teter surveyed the properties for Wells in April, 1980.

In July and August, 1978, Wells sent letters to McGee telling him to remove his personal property from the realty Wells had purchased from him in April. That property included cars, a mobile home, furniture and other personal effects. Then McGee and McElwain sued Wells in the Circuit Court of Randolph County to void his deeds, for damages and for a temporary injunction to prevent interference by him and others until the title problems were resolved. In November, 1980, the court enjoined Wells from removing or damaging the mobile home and its content, and tried the whole case in August, 1981.

█ The trial court found as fact that Mallow's May, 1978 survey properly described 4.6 acres upon which was the six-room farmhouse conveyed in one of McGee's April, 1978 deeds to Wells. The other April deed to Wells was found to have conveyed 54.4 acres as surveyed by Teter, subject to McElwain's thirty-five acres on the East side of the land. Teter's survey also was found to properly plot McElwain's thirty-five acres. McElwain's survey was rejected because she and McGee told Shreve where the boundary should be.[3] Then the court invalidated two August, 1978 and the September, 1978 deeds from McGee to McElwain because of Wells' earlier deed. He ordered McGee to convey to McElwain thirty-five acres as platted by Teter; to deed Wells 4.6 acres according to Mallow's survey, upon which was the six-room house; and convey to Wells a 54.4 acre tract according to Teter's survey. Finally, the court permitted McGee to remove his personal property, including his mobile home, from the 4.6 acre parcel.

McGee and McElwain contend that the deeds to Wells are void because they were not properly notarized, consideration was lacking or inadequate, and McGee was drunk and mentally disabled when he signed them.

Wells maintained that the April, 1976 deed from McGee to McElwain was too uncertain to constitute notice to a purchaser, and that there was no evidence that McGee was drunk or mentally incapable of signing the deeds (nor was there evidence of fraud or coercion).

█ Findings of fact by a trial court sitting without a jury will not be reversed unless the evidence clearly preponderates against them. Syllabus Point 1, *Trenton*

---

3. This, of course, would ordinarily not be a reason to reject a survey: it is quite common and often necessary for potential grantors and grantees to direct a surveyor establishing a new line.

The trial court made Finding of Fact No. 3: "The Plat of survey for Leona McElwain, surveyed and compiled June 19, 1978, by Jerry L. Shreve, offered and admitted into evidence as Plaintiffs' Exhibit No. 1, was void in that Jerry L. Shreve prepared the survey where Mrs. McElwain and Mr. McGee said to place the various points and make the survey and further that it was surveyed after the Wells' deed and did not follow the description contained in the April 8, 1976, conveyance by Thomas A. McGee to Leona McElwain, which states "said tract of 35 acres being situated along the eastern side of a larger tract or parcel of land owned by the party of the first part and containing 144 acres, more or less, the same being the home land of Michael and Sylvia McGee."

"The United States Government Forest Land adjoins the 35 acre tract herein conveyed on the northeast, and further did not consider the April 22, 1978, deed from Thomas A. McGee to Verlin Wells, Mark Wells and Elizabeth Julian, which likewise placed the McElwain's 35 acres on the east side of said land."

*Construction Co. v. Straub*, 172 W.Va. 734, 310 S.E.2d 496 (1983); *Carey v. Campbell*, 170 W.Va. 541, 295 S.E.2d 32 (1982). A party seeking to invalidate a transaction has the burden of proving a grantor's incompetence. *Kadogan v. Booker*, 135 W.Va. 438, 66 S.E.2d 297 (1951); Syllabus Point 3, *Ellison v. Lockard*, 127 W.Va. 611, 34 S.E.2d 326 (1945). There was adequate evidence to support the court's finding that McGee was competent to make the deeds and had not been coerced or fraudulently induced.

■ The deeds were acknowledged at a notary's home when she was present and aware of the acknowledgment, but her husband signed the documents in her stead because she was ill. Acknowledgment is a prerequisite for recording, W.Va. Code, 39–1–2, but adds nothing to the validity of a deed as between the parties and others who know about it. A defect in acknowledgment "does not detract from the force of the deed in making effective the conveyance intended to be made thereby." *State v. Armstrong*, 134 W.Va. 704, 61 S.E.2d 537, 539 (1950). Even an unrecorded deed is good against a grantor and his heirs, *Morgan v. Snodgrass*, 49 W.Va. 387, 38 S.E. 695 (1901), and it is the grantor here who wants to impeach his deeds to Wells.

■ About consideration: W.Va. Code, 36–3–6 provides that a deed will not fail simply for lack thereof, and inadequacy of consideration does not by itself invalidate a conveyance. Syllabus Point 3, *Farrar v. Young*, 158 W.Va. 977, 216 S.E.2d 575 (1975). However, there are no facts to indicate that consideration was inadequate. The April 22, 1978 deeds recite an agreement to pay $200 per acre, a price paid to McGee by another purchaser for other acreage from the same estate. McElwain would have had to show that Wells' $200 per acre was grossly inadequate and would shock a court's conscience, *O'Dell v. Lawrence*, 91 W.Va. 96, 112 S.E. 297 (1922); *Pennybacker v. Laidley*, 33 W.Va. 624, 11 S.E. 39 (1890); *McGrue v. Brownfield*, 202 Va. 418, 117 S.E.2d 701 (1961), which would have been difficult considering that she paid even less per acre for her land. She

cites *Sheppard v. Clay Peacock Coal Co.*, 169 W.Va. 106, 285 S.E.2d 902 (1982), to support her contention that McGee's mental weakness plus inadequate price should invalidate Wells' deeds. *Sheppard* does not apply because the evidence here did not support findings of mental weakness or inadequate consideration.

The trial court did not err in finding there was adequate consideration and ordering that $200 per acre as agreed upon be paid by Wells to McGee (now his estate).

■ McElwain's final argument is that the court should have adopted Shreve's survey and not Mallow's and Teter's. We agree to the extent that they impinge upon McElwain's thirty-five acres. The trial court erred in using surveys generated by Wells' surveyors to determine what acreage belonged to whom.

■ Even if McElwain's deed description was too vague to pass title, "that is certain which can thus be made certain." Syllabus Point 3, in part, *Thorn v. Phares*, 35 W.Va. 771, 14 S.E. 399, 26 A.L.R. 1548n (1891). A recorded but ineffectual document is also good against subsequent purchasers. *Atkinson v. Miller*, 34 W.Va. 115, 11 S.E. 1007, 9 L.R.A. 544 (1890).

When Wells purchased from McGee he had actual knowledge that McElwain had thirty-five acres of property in the eastern portion of the McGee family farm and that these thirty-five acres were yet to be platted. Wells' first April 22, 1978 deed, that he drafted, advised him in his own words, *"the amount of acres [is] to be determined by survey, after the thirty-five acres have been surveyed to Leona McElwain on the East side of this land."* (Emphasis supplied.)

Wells was not entitled to get his line set until McElwain surveyed hers. He knew that her deed was recorded in 1976, and that her land had not been surveyed when he purchased from McGee and did his engineering. Within a few months after Wells' deeds, McElwain and McGee fixed bound-

aries for her thirty-five acres. Only after that could Wells describe his property. Wells' premature survey should not have been accepted by the trial court to describe McElwain's thirty-five acres (even if the six-room house, particularly mentioned in one of Wells' deeds, was on that tract).

Reversed.