IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 15-1073

_____

FILED
April 20, 2017
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CYNTHIA W. VAN HEYDE,
ADMINISTRATRIX OF THE ESTATE OF PATRICK A. WOLFE,
Plaintiff Below, Petitioner

v.

SUSAN MILLER, JESSICA MILLER LIPSCOMB, AND HOUSES & MORE, INC.,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Preston County
Honorable Andrew N. Frye, Jr., Judge
Civil Action No. 14-C-87

AFFIRMED

_____

Submitted: February 7, 2017
Filed: April 20, 2017

William E. Ford III, Esq.                    Rodney L. Bean, Esq.
Lisa Furbee Ford, Esq.                       Monte L. Williams, Esq.
Ford Law Office                              Chelsea V. Prince, Esq.
Clarksburg, West Virginia                    Steptoe & Johnson PLLC
Attorneys for Petitioner                     Morgantown, West Virginia
                                             Attorneys for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

2. "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

3. "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil

Procedure."  Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

4.  "'A person is mentally competent to make a conveyance of land if he knows the nature, character and effect of his deed.'  *Carrigan v. Davis*, 84 W.Va. 473 [100 S.E. 91 (1919).]" Syl. Pt. 1, *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962).

5.  "'The presumption of law is in favor of the sanity and mental capacity of a grantor, and the person attacking his conveyance on the ground of his incapacity, or the exertion of undue influence over him in inducing him to make the deed, bears the burden of proof.  One who charges fraud and undue influence must prove it.'  *Carrigan v. Davis*, 84 W.Va. 473 [100 S.E. 91 (1919)]." Syl. Pt. 2, *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962).

6.  "'A grantor in a deed may be extremely old, his understanding, memory, and mind [e]nfeebled and weakened by age, and his action occasionally strange and eccentric, and he may not be able to transact many affairs of life, yet if age has not rendered him imbecile, so that he does not know the nature and effect of the deed, this does not invalidate the deed.  If he be capable, at the time, to know the nature, character and effect of the

ii

particular act, that is sufficient to sustain it.'  Point 5 Syllabus, *Buckey v. Buckey*, 38 W.Va. 168 [18 S.E. 383 (1893)]."  Syl. Pt. 3, *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962).

7.    "The presumption of law is that the acceptance of a deed, made in pursuance of an antecedent written agreement for the sale of land, is satisfaction of all previous covenants, and, although such acceptance may in some circumstances, be but partial execution of the contract, to rebut the legal presumption, the intention to the contrary must be clear and convincing."  Syllabus. *William James Sons Co. v. Hutchinson*, 79 W.Va. 389, 90 S.E. 1047 (1916).

8.    "A party challenging the validity of a deed because of inadequate consideration and grantor incompetence has the burden of proving those facts.  Absent convincing proof, a trial court should find the challenged deed valid."  Syl. Pt. 3, *McElwain v. Wells*, 174 W. Va. 61, 322 S.E.2d 482 (1984).

Workman, Justice:

This is an appeal by Cynthia W. Van Heyde (hereinafter "petitioner"), Administratrix of the Estate of Patrick A. Wolfe, from an order granting summary judgment to Susan Miller, Jessica Miller Lipscomb, and Houses & More, Inc. (hereinafter "respondents" or referenced individually) entered by the Circuit Court of Preston County, West Virginia, on September 30, 2015. The petitioner contends the circuit court erred in granting summary judgment where genuine issues of material fact exist regarding a real estate transaction. Upon thorough evaluation of the parties' briefs, arguments, record on appeal, and applicable precedent, this Court finds no error in the circuit court's determinations and consequently affirms the summary judgment order.

I. Factual and Procedural History

The petitioner's uncle, Mr. Patrick A. Wolfe, owned a sixty-acre parcel of land in Preston County, West Virginia. Mr. Wolfe met with Respondent Mrs. Susan Miller, a real estate agent with the real estate brokerage company of Houses & More, Inc. (hereinafter "Houses & More"), in June 2013 to discuss listing his property for sale. He was eighty-five years old at the time of the initial meeting. Mrs. Miller and Mr. Wolfe visited the subject property, and, according to the deposition testimony of Mrs. Miller, Mr. Wolfe advised her that he wanted to sell the property quickly. After visiting the property a second time

1

independently,[1] Mrs. Miller met with Mr. Wolfe to discuss the list price. Mrs. Miller contends that Mr. Wolfe wanted to list the property for $90,000, including Mr. Wolfe's portion of the mineral interests. They discussed recent comparable sales and the unique terrain of the property, its overgrown meadows, and the existence of high-tension power lines through the property. Mr. Wolfe and Mrs. Miller thereafter entered into a listing agreement whereby Mrs. Miller would list the property at a price of $90,000. In a hand-written notation, Mr. Wolfe indicated the price included both the surface and his portion of the mineral interests.

Respondent Jessica Miller Lipscomb is Mrs. Miller's daughter and is also a real estate agent with Houses & More. On June 21, 2013, Mrs. Lipscomb met with Jason Haskiell and Ashley Kyle (hereinafter "buyers") at the Houses & More office. The buyers submitted an offer to purchase the property for $90,000, including Mr. Wolfe's portion of the mineral interests. Mr. Wolfe accepted their offer and executed a real estate purchase agreement the following day. Mrs. Miller and Mrs. Lipscomb represented Mr. Wolfe and the buyers as dual-agents in the transaction, the dual agency was properly explained to the seller and buyers, and all parties signed a Notice of Agency Relationship. The purchase agreement specified that the sale included Mr. Wolfe's portion of the mineral interests, and

[1]In deposition testimony, Mrs. Miller indicated that she measured the road frontage, took photographs, viewed the property for points of egress and ingress, and inspected the neighborhood generally.

2

it required any changes, modifications, or amendments to the agreement be in writing and signed by the parties. The closing was to occur on or before August 28, 2013.[2]

In August 2013, Mr. Wolfe informed Mrs. Miller that he had changed his mind and no longer wanted to include the mineral interests in the sale. He did not complete any documentation regarding this change of intention, but he advised Mrs. Miller that his nephew, husband of Petitioner Van Heyde, would contact Mrs. Miller about the property sale. On August 19, 2013, the petitioner and her husband, residents of Florida, met with Mr. Wolfe and Mrs. Miller. Unbeknownst to the petitioner, her husband, or Mr. Wolfe, Mrs. Miller recorded the meeting on an audio recorder.[3] During the meeting, the petitioner and her husband questioned the contract price of $90,000 for surface and mineral rights. Mrs. Miller explained that $90,000 was the price suggested by Mr. Wolfe based upon discussions regarding factors to be considered in valuing property, and she also emphasized that any alteration to the purchase agreement would require written documentation, pursuant to the

---

[2]A scriverner's error in the deed conveying the property to Mr. Wolfe was thereafter identified during the title search performed by the closing attorney, and Mr. Wolfe had his personal attorney, Woodrow Turner, prepare a corrective quitclaim deed properly conveying title to Mr. Wolfe. After identification of that error, the parties entered into a waiting period prior to closing.

[3]According to the respondents' brief, Mrs. Miller and Mrs. Lipscomb recorded the meeting because they had previously received a warning to be cautious of the petitioner's husband because he had threatened to sue the brokerage as a result of the property transaction.

3

terms of the agreement.[4]  On August 21, 2013, the petitioner and her husband submitted a letter to Mrs. Miller on Mr. Wolfe's behalf.  The letter expressed Mr. Wolfe's desire to continue with the sale of the surface interests at a "mutually agreed upon" price, but it indicated Mr. Wolfe's intention to retain his portion of the mineral interests.  The petitioner and her husband thereafter returned to their home in Florida.  The petitioner's husband later testified that, prior to leaving for Florida, the petitioner had told Mr. Wolfe she would purchase the subject property, including the mineral rights, for $90,000.  Mr. Wolfe had rejected her offer.

Based upon Mr. Wolfe's expressed intention to alter the terms of the purchase agreement, Mrs. Miller scheduled a meeting with the parties to the agreement.  On August 26, 2013, she first met with Mr. Wolfe in the morning and later met with Mr. Wolfe and the buyers in the evening.  The petitioner and her husband were not present for either meeting.  Mrs. Miller also surreptitiously recorded the meetings of August 26, 2013.  During the morning meeting, the petitioner emphasizes Mr. Wolfe's statement that he did not wish to sell the property with the mineral rights.  Mrs. Miller thereafter informed him that his refusal to sell the mineral interests would cause him to be sued, and she advised him to go through

_____

[4]When the petitioner raised concerns about the adequacy of the contract price, Mrs. Miller asked her if she and her husband were challenging Mr. Wolfe's mental competency to handle the property transaction.  The petitioner's husband indicated they were not challenging Mr. Wolfe's competency.

4

with the transaction. Mrs. Miller further advised Mr. Wolfe that "since we are representing both you and them . . ., we can't take sides[.]"

During the evening meeting with the buyers on August 26, 2013, Mr. Wolfe confirmed that he was willing to sell *both* the surface and mineral rights for the contract price of $90,000, noting that he only owned three-fifths of the mineral interests. The parties thereafter memorialized their understanding by executing an addendum to the purchase agreement confirming the sale of both the surface and mineral rights.

An attorney, Neil Reed, subsequently met with Mr. Wolfe to prepare the deed transferring the property to the buyers. Mr. Reed later testified that Mr. Wolfe did not exhibit any indication of confusion or mental incompetency during their meeting. The parties proceeded to the closing on August 28, 2013, at the law office of the closing attorney, Trudy Goff. Mrs. Miller and Mrs. Lispcomb, as well as the buyers, later testified that Mr. Wolfe evidenced a complete understanding of the significance of that transaction. Ms. Goff also testified that Mr. Wolfe comprehended the details of the sale; she did not observe any indication of undue influence over Mr. Wolfe.

Mr. Wolfe received a check in the amount of $83,925.01 after the execution of the deed; this constituted the purchase price minus settlement charges. He deposited the

check in his personal checking account that same day and placed the documentation regarding the transaction in the box in which he kept other important documentation. On August 30, 2013, Mr. Wolfe visited Dr. Roger Lewis for treatment of minor injuries he sustained in a fall. Dr. Lewis later testified that Mr. Wolfe was coherent during the examination and had sufficient mental capacity to understand the nature of his medical treatment and to refuse to be admitted to the hospital for further evaluation of a suspected underlying cardiac issue. Dr. Lewis specifically stated he was "as certain as I can be" that Mr. Wolfe was fully competent.

On September 2, 2013, Mr. Wolfe was found dead in his home. The medical examiner noted the cause of death as bacterial bronchopneumonia, with probable Alzheimer's dementia as a contributing factor. The petitioner states she was not aware that the closing had taken place until she returned to West Virginia upon Mr. Wolfe's death.[5]

On May 1, 2014, the petitioner filed a civil action in which she raised the following claims against the respondents: (1) breach of contract; (2) breach of fiduciary duty; and (3) constructive fraud. The gravamen of the petitioner's claims is the allegation that the respondents breached their contractual duties to Mr. Wolfe because they knew or should have

---

[5]Subsequent testimony revealed that the petitioner and her husband had not spoken with Mr. Wolfe since August 21, 2013.

6

known he was mentally incapable of legally transferring the property. The petitioner also initially named the buyers as defendants and sought rescission of the deed conveying the property. Pursuant to the court's scheduling order, discovery ended on July 1, 2015. By agreed order, the petitioner thereafter dismissed the buyers as defendants and withdrew her claim regarding rescission of the deed. The case proceeded on the three claims against the respondents.

On August 31, 2015, the respondents filed a motion for summary judgment, arguing the petitioner's dismissal of the rescission of deed claim against the buyers essentially extinguished or waived her claims against the respondents.[6] Alternatively, the respondents argued the petitioner, as a matter of law, was unable to establish that Mr. Wolfe lacked the requisite mental capacity to enter into a binding agreement on August 28, 2013. The respondents emphasized Mrs. Miller's uncontroverted testimony that Mr. Wolfe did not exhibit signs of mental incompetency during her dealings with him; the testimony of Mr. Reed and Ms. Goff that nothing about Mr. Wolfe's demeanor led them to discern any mental infirmity; the petitioner's inability to identify specific conduct of Mr. Wolfe during the transaction that should have alerted the respondents to any problem with his mental functioning; and the testimony of Dr. Roger Lewis concerning the medical treatment of Mr.

---

[6]The lower court did not premise its ultimate findings upon this waiver argument. Instead, the court proceeded to a thorough analysis of the petitioner's claims against the respondents.

7

Wolfe two days after the closing and Mr. Wolfe's sufficient mental capacity to comprehend and consent to medical treatment.

In opposition to the respondents' summary judgment motion, the petitioner submitted affidavits from three acquaintances of Mr. Wolfe who attested to a decline in Mr. Wolfe's mental health. Tom DeBerry stated Mr. Wolfe had become disoriented and forgetful during the five to six months before his death. Michelle Hebb similarly described Mr. Wolfe as increasingly forgetful, lost, and unable to identify the current day or month. Bradley Lipscomb, who lived in rental property owned by Mr. Wolfe, recounted incidents in which Mr. Wolfe had asked the same questions repeatedly, misplaced items, and displayed a lack of hygiene. He also noted that Mr. Wolfe discussed his meetings with a real estate broker and his intention to retain his portion of the mineral interests.

Upon evaluation of the petitioner's claims, the circuit court found no genuine issue of material fact. By order entered September 30, 2015, the circuit court granted the respondents' motion for summary judgment, and this appeal followed.

## II. Standard of Review

The standards of review applicable to issues of this nature have been clearly stated by this Court. "A motion for summary judgment should be granted only when it is

8

clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In syllabus points two and three of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court further held as follows:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

This Court reviews the circuit court's entry of summary judgment de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). With these standards as guidance, we proceed to an evaluation of this matter.

## III. Discussion

Throughout the eleven assignments of error raised by the petitioner, she addresses several purported issues of material fact and contends they should have precluded

9

summary judgment in the respondents' favor. We address the petitioner's claims in the context of her assertions of breach of contract, breach of fiduciary duty, and constructive fraud.

### A. Alleged Breach of Contract

The petitioner contends the respondents breached the contractual duties owed to Mr. Wolfe by ignoring Mr. Wolfe's verbal and written instructions regarding the inclusion of the mineral interests in the sale; secretly recording three meetings with Mr. Wolfe; and assisting Mr. Wolfe in the sale despite their alleged knowledge that he lacked the requisite mental capacity necessary to execute the sales contract.

Analyzing the facts adduced in discovery below regarding the inclusion of the mineral rights, this Court finds the record devoid of any evidence to contradict Mrs. Miller's testimony that Mr. Wolfe ultimately sought to sell *both* the surface and mineral rights for $90,000. Mr. Wolfe first indicated his intention to sell the mineral interests by initialing the notation on the original contract, indicating he was "[s]elling all rights including oil and gas." Further, despite Mr. Wolfe's brief change of mind regarding his desire to sell the mineral interests, the petitioner presented nothing to contradict evidence of Mr. Wolfe's subsequent decision reaffirming his intention to include the mineral interests, evidenced by the August 26, 2013, addendum to the sales contract. The undisputed evidence demonstrates that Mr.

Wolfe contracted to sell the property, including his portion of the mineral interests, to the buyers for $90,000, and he executed a deed conveying such property at the August 28, 2013, closing. Consequently, we discern no error in the circuit court's findings with respect to the petitioner's claims on this issue.

The petitioner also contends Mrs. Miller breached her contract with Mr. Wolfe by surreptitiously recording their meetings. Neither the Listing Contract nor the Notice of Agency Relationship restricts, limits, or addresses the manner in which the real estate agents are permitted to record information concerning transactions. Furthermore, recording the meetings did not violate any law in West Virginia, and the petitioner presented no evidence contradicting the testimony of the respondents' expert, indicating that their conduct comported with their professional obligations. Therefore, this Court finds no error in the circuit court's conclusion that the acts of recording meetings do not substantiate the petitioner's breach of contract claim.

The petitioner also argues the respondents breached the contract with Mr. Wolfe by assisting him in executing a binding sales contract while allegedly knowing he lacked adequate mental capacity. The concept of mental competence to convey land has been repeatedly addressed by this Court. In syllabus point one of *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962), for example, this Court explained "'[a] person is mentally

11

competent to make a conveyance of land if he knows the nature, character and effect of his deed.' *Carrigan v. Davis*, 84 W.Va. 473 [100 S.E. 91 (1919).]" In syllabus point two, this Court further elucidated:

> "The presumption of law is in favor of the sanity and mental capacity of a grantor, and the person attacking his conveyance on the ground of his incapacity, or the exertion of undue influence over him in inducing him to make the deed, bears the burden of proof. One who charges fraud and undue influence must prove it." *Carrigan v. Davis*, 84 W.Va. 473 [100 S.E. 91 (1919)].

In syllabus point three of *Cyrus*, this Court addressed concerns very similar to those raised in the current matter and held:

> "A grantor in a deed may be extremely old, his understanding, memory, and mind [e]nfeebled and weakened by age, and his action occasionally strange and eccentric, and he may not be able to transact many affairs of life, yet if age has not rendered him imbecile, so that he does not know the nature and effect of the deed, this does not invalidate the deed. If he be capable, at the time, to know the nature, character and effect of the particular act, that is sufficient to sustain it." Point 5 Syllabus, *Buckey v. Buckey*, 38 W.Va. 168 [18 S.E. 383 (1893)].

To overcome the presumption that the August 28, 2013, deed transfer was valid, the petitioner must present clear and convincing evidence to the contrary. *See* Syl., *William James Sons Co. v. Hutchinson*, 79 W.Va. 389, 90 S.E. 1047 (1916) ("The presumption of law is that the acceptance of a deed, made in pursuance of an antecedent written agreement for the sale of land, is satisfaction of all previous covenants, and, although

12

such acceptance may in some circumstances, be but partial execution of the contract, to rebut the legal presumption, the intention to the contrary must be clear and convincing."). In syllabus point three of *McElwain v. Wells*, 174 W. Va. 61, 322 S.E.2d 482 (1984), this Court explained: "A party challenging the validity of a deed because of inadequate consideration and grantor incompetence has the burden of proving those facts. Absent convincing proof, a trial court should find the challenged deed valid." *Id*. at 62, 322 S.E.2d at 483.

The petitioner did not present testimony from any witness to the closing transaction on August 28, 2013, suggesting that Mr. Wolfe failed to understand his decision to convey both surface and mineral interests. Ms. Goff, the closing attorney, unequivocally denied that Mr. Wolfe was confused or lacked the ability to understand the discussions during the closing. Likewise, Mr. Reed, the attorney who prepared the deed, testified that Mr. Wolfe fully appreciated the nature of the property transfer. As this Court stated in *Cyrus*, "[t]he evidence of witnesses present at the execution of the deed is entitled to peculiar weight." 147 W.Va. at 122, 126 S.E.2d at 39 (citations omitted).[7] Thus, the circuit court properly relied upon the testimony of witnesses to the transaction in finding insufficient

---

[7]"The testimony of a notary public or other official who took the acknowledgment is entitled to peculiar weight in determining the mental capacity of the grantor." *Cyrus*, 147 W.Va. at 122, 126 S.E.2d at 39 (citing Syl. Pt. 1, *Burkle v. Abraham*, 112 W.Va. 257, 164 S.E. 150 [1932]).

evidence that the grantor was mentally incompetent at the time of the closing or that Mrs. Miller had any reason to believe that Mr. Wolfe was incompetent.

The circuit court was also correct in placing emphasis upon the testimony of Dr. Lewis, who had treated Mr. Wolfe for superficial wounds on August 30, 2013, two days after the closing. This Court has observed "[t]he evidence of physicians, especially those who attended the grantor and were with him considerably during the time it was charged he was of unsound mind, is entitled to great weight." *Id.* 122, 126 S.E.2d at 39 (citations omitted). Even the petitioner's retained expert, Dr. Bobby Miller, stated the Mr. Wolfe "believed he was signing away his real estate including surface and mineral rights" on the date of the closing.

The three affidavits submitted by the petitioner regarding Mr. Wolfe's competence fail to overcome the presumption of validity of the transaction. As this Court has explained, "[t]he point of time to be considered in determining the grantor's mental capacity is the time of the execution and delivery of the deed." *Id*. at 122, 126 S.E.2d at 39. The affidavits merely contain generalized observations of Mr. Wolfe's behavior, such as forgetfulness, balance and hygiene issues, or repetition of stories.[8] These observations do

_____

[8]As the circuit court observed, the affidavits

do not provide any details regarding observations by these witnesses of Mr.

(continued...)

14

not have a direct bearing on his mental capacity on the crucial date in question, and the affiants were not present at the closing. Moreover, the petitioner conceded in her testimony that she had no contact with Mr. Wolfe after leaving for Florida on August 21, 2013, and that Mr. Wolfe could indeed have changed his mind on the issue of inclusion of both surface and mineral interests between her conversations with him and the date of the closing. Even in a light most favorable to the petitioner, the evidence does not establish a genuine issue of material fact necessitating jury determination on the petitioner's breach of contract claim. Summary judgment on that issue was appropriate.

## B. Alleged Breach of Fiduciary Duty

The petitioner also contends the respondents breached their fiduciary duty to Mr. Wolfe by attempting to further their own interests in receiving a sales commission rather than protecting Mr. Wolfe's financial interests. The petitioner argues genuine issues of material fact exist regarding this alleged breach of fiduciary duty, based upon (1) the decision

[8](...continued)
Wolfe on August 28, 2013, the date of closing. . . . Instead, the generalized observations regarding Mr. Wolfe's awareness of the location of his vehicle, his repetition of questions and stories, and descriptions of forgetfulness have no bearing on the critical question of whether Mr. Wolfe appreciated the interests he owned and conveyed in this deed transaction. Conversely, Mr. Wolfe's conduct immediately following the real estate closing - depositing the substantial check received in his bank account on the same day of the transaction and securing the documents related to the transaction with his other important documents - demonstrates his own awareness of the important nature of the transaction.

to list the property for $90,000; (2) the role of the respondents as dual-agents for Mr. Wolfe and the buyers; and (3) the act of recording the three meetings without disclosing this fact to Mr. Wolfe.

In furtherance of her claims, the petitioner submitted an appraisal indicating the value of the surface interests alone was over $100,000. However, the undisputed evidence indicated the respondents sold Mr. Wolfe's property in a manner consistent with his clearly articulated desire to achieve a prompt sale. The respondents' expert testified, without contradiction, that listing the property in a manner consistent with Mr. Wolfe's desire did not violate any professional standard governing the respondents.[9] Similarly, the petitioner presented no evidence that dual-agency in a real estate transaction violates a fiduciary duty to either the buyer or the seller. The respondents' expert testified that the dual-agency was consistent with the respondents' professional obligations. Additionally, as explained above, Mrs. Miller's decision to record the meetings did not violate any legal or professional standard in the real estate industry. Accordingly, the circuit court's decision to grant summary judgment to the respondents on the breach of fiduciary duty claim was correct.

_____

[9]As the circuit court noted in granting summary judgment, had the respondents truly desired to act in furtherance of their own financial interests, they would have attempted to sell the property for a *higher* price, resulting in a higher commission.

## C. Alleged Constructive Fraud

The petitioner also asserted a claim of constructive fraud, alleging the respondents intentionally, knowingly, and recklessly engaged in a course of fraudulent conduct, through both omission and misrepresentation of facts, to secure Mr. Wolfe's signature on the deed conveying the property to the buyers. In *Kadogan v. Booker*, 135 W.Va. 438, 66 S.E.2d 297 (1951), this Court addressed the concept of undue influence and explained as follows:

> To set aside a deed on the ground of undue influence it must be shown that such influence destroyed the free agency of the grantor and substituted the will of another person for that of the grantor, and unless these facts appear, motive and opportunity to exert undue influence and failing mental powers of the grantor are insufficient to set aside or cancel the deed.

*Id*. at 458, 66 S.E.2d at 308 (citations omitted). It is also instructive to consult this Court's definition of constructive fraud, as follows:

> "Constructive fraud" is a breach of legal or equitable duty, which, irrespective of moral guilt of fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. An intent to deceive is an essential element of actual fraud. The presence or absence of such intent distinguishes actual fraud from constructive fraud

*Miller v. Huntington & Ohio Bridge Co.*, 123 W.Va. 320, 334, 15 S.E.2d 687, 695 (1941).

17

In the present case, it is undisputed that the petitioner was not present for the August 28, 2013, closing. Further, she acknowledged she had not witnessed an omission or misrepresentation by the respondents. She failed to present evidence of constructive fraud or undue influence on the part of any person present at the closing; rather, she argued that Mrs. Miller's conduct in recording the meetings constituted evidence of constructive fraud. Yet, the petitioner was unable to identify any connection between Mrs. Miller's recordings and Mr. Wolfe's exercise of free will. In other words, no evidence exists indicating that the act of recording the meetings influenced Mr. Wolfe to sell the property against his will. Thus, the circuit court correctly concluded the petitioner failed to establish that Mr. Wolfe was the victim of constructive fraud, and summary judgment on this issue was appropriate.

## D. Additional Assignments of Error

Having concluded there are no genuine issues of material fact with regard to the petitioner's three claims against the respondents and that summary judgment in the respondents' favor was appropriate, we briefly address the petitioner's other assignments of error. The petitioner contends that Circuit Court Judge Andrew N. Frye, Jr., sitting by assignment, erred by failing to recuse himself from this case. The petitioner argues Judge Frye indicated bias toward the respondents' case by making statements in a telephonic hearing on a discovery-related motion on June 4, 2015. Judge Frye remarked: "I just said that I think I'm going to have the competency issue decided if – as I read what you sent to

18

me so far - - if this man's competent, the rest of it's over. . . ." The petitioner argues that such comment "is an unsolicited and curiously mistimed statement which indicates an opinion on one of the primary fact issues of the case, which clearly favors the [respondents]." The petitioner further maintains that the rapidity with which Judge Frye granted the respondents' motion for summary judgment and the "geographic proximity between Judge Frye's home court" and the Circuit Court of Preston County, created "an appearance of impropriety and partiality" toward Mrs. Miller, the wife of the sitting Circuit Court Judge in Preston County.

When the petitioner sought disqualification of Judge Frye below, Judge Frye advised this Court of the petitioner's motion and informed the Court that he did not believe his disqualification was warranted. Then Chief Justice Margaret Workman reviewed the matter, and an Administrative Order was entered on July 8, 2015, indicating this Court had "determined that the evidence set out in support of the disqualification motion is insufficient to warrant such disqualification." The petitioner's arguments on appeal do not cause this Court to reconsider its previous order; thus, that assignment of error is without merit.

Similarly, this Court finds the petitioner's remaining assignments of error unavailing. Many of the petitioner's arguments are speculative, unsupported by the record, or simply immaterial to the issue of summary judgment. She contends, for instance, that the

circuit court erroneously refused to grant her untimely motion to amend her complaint a second time to plead constructive fraud with additional particularity. Yet, the circuit court did not base its summary judgment on the sufficiency of the petitioner's pleadings; rather, the summary judgement was premised upon the merits of the petitioner's case and the absence of any evidence of wrongdoing by the respondents. Moreover, "[a] motion for leave to amend a complaint is addressed to the sound discretion of the trial court." *Mauck v. City of Martinsburg*, 178 W.Va. 93, 96, 357 S.E.2d 775, 778 (1987) (citations omitted).

Likewise, this Court finds no merit in the petitioner's claim that the circuit court limited her "available remedies" by placing significance on the petitioner's voluntarily dismissal of her claim that the deed transferring the property was invalid. The circuit court's reference to the dismissal of that other claim did not serve to "limit" the petitioner's claims in any manner; it simply referenced the fact that the petitioner had no evidence to establish her claims against the respondents. As the circuit court found, the petitioner's "choice of remedies does not relieve her of the obligation to prove each necessary element of her claims or to demonstrate a disputed issue of material fact. . . ." Further, the circuit court specified that the petitioner "may elect to seek any remedy to which she believes she is entitled by law. However, she has a concomitant obligation to establish the essential elements of the claims

which correspond to the remedy sought."  This Court agrees with the circuit court's assessment of that issue.[10]

## IV.  Conclusion

Based upon the foregoing, this Court affirms the September 30, 2015, order of the Circuit Court of Preston County granting summary judgment to the Respondents.

Affirmed.

---

[10]The petitioner also argues that the circuit court's discovery rulings concerning the timing of the production of audio recordings were erroneous.  Those issues were resolved significantly prior to the circuit court's consideration of the summary judgment issue; they are not relevant to that issue or this Court's opinion today.  The petitioner does not contend the discovery rulings impacted her production of evidence in support of her claims.  We find no merit to the assignment of error regarding the timing of production of those audio recordings.

Likewise, we find no merit in the petitioner's contention that the circuit court erroneously granted the respondents' motion in limine to exclude from trial certain evidence regarding Mrs. Miller's role as caretaker for her aging mother.  Summary judgment having properly been granted to the respondents, there will not be a trial from which any evidence will be excluded.  This issue is not a matter to be considered on appeal.